BYRON COMMUNITY UNIT SCHOOL DISTRICT No. 226, Plaintiff-Appellee, v. DUNHAM-BUSH, INC., Defendant-Appellant (Unteed, Scaggs, Nelson, Ltd., *et al.*, Defendants).

Second District   No. 2—90—0388

Opinion filed July 3, 1991.

Douglas P. Roller and Daniel J. Klier, both of Rooks, Pitts & Poust, of Chicago, for appellant.

Michael J. Foley and Lorence H. Slutzky, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., and Geoffrey G. Gilbert, of McBride, Baker & Coles, both of Chicago, Moehle, Smith & Nieman, P.C., and Stephen C. Pemberton, of Williams & McCarthy, both of Oregon, Thomas H. Boswell, of Thomas & Hinshaw, Culbertson, of Rockford, and Lisa A. Treviranus, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Byron Community Unit School District No. 226 (Byron), brought this action against defendant, Dunham-Bush, Inc. (Dunham), for various breach of warranty and breach of contract claims. Appeal was allowed pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308) after a motion for summary judgment by Dunham was denied. We affirm.

The pleadings and exhibits reveal the following sequence of events. Dunham manufactured, sold and serviced industrial heating and cooling equipment. Defendant sold an electric heating and air-conditioning system to plaintiff for use in the high school the district was building at a cost of $180,000, exclusive of freight charges. Byron paid an additional $5,000 for a second-year warranty and summer-winter check on the system, and $3,000 for factory supervision of installation and start-up. The Dunham system was delivered to the high school site in November 1981, but there is no record of the precise date of delivery or installation. The system was put into operation the following May.

It subsequently became apparent the system was not heating the school properly. Repairs were undertaken, but, as of the fall of 1985, the problem had not been completely resolved. In October 1985 Byron suggested that Dunham enter into a "stand-still" agreement in order to allow time for Byron and Dunham to resolve the dispute over the heating system without litigation. Under Byron's proposal Byron would agree not to bring a suit against Dunham until the following May if Dunham would agree not to assert the delay accruing between November 1, 1985, and May 1, 1986, in support of an argument that suit was barred by the statute of limitations. Byron also indicated

that its request for a "stand-still" arrangement was being extended to the building architect and engineer and would require unanimous approval to become effective.

Dunham assented to the agreement by a letter of November 5, 1985. By letter of November 18, 1985, Buchanan-Bellows (Buchanan), the building engineer, indicated it would not enter into any such agreement, and Byron so informed Dunham. Byron also asked Dunham if its position on the statute of limitations question was changed as a result of Buchanan's negative response. According to the affidavit of Geoffrey Gilbert, then counsel for Byron, in a phone conversation of November 25, 1985, Robert Melroy, counsel for Dunham, responded on behalf of Dunham that Buchanan's refusal to participate did not alter the position of Dunham-Bush.

In April 1986 Byron filed suit against several defendants, including Dunham. The complaint included counts against Dunham for breach of express warranty (count II), breach of implied warranties of fitness for a particular purpose and workmanlike performance (counts IV, V), and breach of a contract of which Byron was a third-party beneficiary (count III). Dunham responded by filing a motion to dismiss pursuant to section 2—619(5) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(5)) or, in the alternative, a motion for summary judgment. In regard to the motion to dismiss, Dunham asserted that Byron's suit was barred by the statute of limitations found in section 2—725 of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1985, ch. 26, par. 2—725). Dunham also offered legal arguments as to why it was entitled to summary judgment relative to each count of Byron's complaint.

In January 1989 the court granted summary judgment in favor of Dunham on all pertinent counts of the complaint. The court made no findings and did not set forth the basis for its decision. A month later, on February 16, 1989, the court vacated its order granting summary judgment and granted leave to Byron to file a second amended complaint. The amendment pleaded the facts surrounding the "stand-still" agreement; asserted that, in reliance on Dunham's representation that it would not plead a statute of limitations defense, Byron had delayed filing suit until April 24, 1986; and contended that Dunham had either waived its right to assert or was estopped from asserting Byron's delay in filing suit from November 1, 1985, until April 24, 1986, as a defense.

Dunham subsequently filed a "Renewed Motion of Defendant Dunham Bush for Summary Judgment on Statute of Limitations Defense." Oral argument on the motion was limited to the statute of

limitations issue. Following argument the trial court indicated that it had granted defendant's original motion for summary judgment on the basis that Byron's action was time barred by the statute of limitations. The judge further explained that, based on his subsequent research, he had decided the original order was erroneous, so he had reversed himself and vacated that order. He now believed that the estoppel issue raised by Byron presented factual questions which should be decided by a fact finder. Dunham's motion for summary judgment was denied. The court also denied Dunham's subsequent motion for reconsideration but certified the estoppel and statute of limitations question for interlocutory appeal. The issue was framed as follows:

"Whether a defendant can be equitably estopped from asserting a statute of limitations defense by a plaintiff where there exists no fiduciary relationship between the parties and where plaintiff has full knowledge of the statute and the date upon which it shall run."

Defendant's application for leave to appeal was allowed on May 15, 1990.

■ Dunham contends that it was improperly denied summary judgment because, as a matter of law, Byron's estoppel argument was insupportable and, therefore, the cause of action was barred by the Code's statute of limitations. Summary judgment, which is a drastic means of terminating litigation, should be granted only when the right of the movant is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) A motion for summary judgment shall be allowed when the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233-34.) The evidence must be strictly construed against the party moving for summary judgment and liberally in favor of the opponent. (*Logan*, 139 Ill. 2d at 234.) If facts are identified upon which reasonable persons may disagree, or inferences which can be drawn from the facts lead to different conclusions, the motion must be denied and the differing facts and inferences resolved at trial. (*Certified Mechanical Contractors, Inc. v. Wight & Co.* (1987), 162 Ill. App. 3d 391, 400.) After carefully reviewing the record in light of these principles, we conclude the trial court correctly determined that Byron should be allowed to invoke the doctrine of estoppel and thus properly denied Dunham's motion.

■ ■ ■ An estoppel is an impediment or bar to the assertion of a right, arising as a result of a man's own act. (*Greer v. Carter Oil Co.* (1940), 373 Ill. 168, 176-77.) The doctrine of estoppel is invoked to prevent fraud and injustice (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 449; *Carey v. City of Rockford* (1985), 134 Ill. App. 3d 217, 218). The test is whether, under all the circumstances of the particular case, conscience and honest dealing require that defendant be estopped. (*Carey*, 134 Ill. App. 3d at 218; *Lincoln-Way Community High School District No. 210 v. Village of Frankfort* (1977), 51 Ill. App. 3d 602, 609-10.) Estoppel arises when a party, by his word or conduct, intentionally or through culpable negligence, induces reasonable reliance by another on his representations and thus leads the other, as a result of that reliance, to change his position, to his injury. (*Payne v. Mill Race Inn* (1987), 152 Ill. App. 3d 269, 277; *Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 95-96; *Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 939.) While an intent to mislead is not necessary, the reliance by the other party must be reasonable. (*Wilson*, 112 Ill. App. 3d at 939.) As we understand it from the question certified by the trial court, Dunham makes a two-pronged argument that Byron has not presented a viable case for estoppel.

■ First, according to defendant, the absence of a fiduciary relationship between itself and Byron undercuts the basis for estoppel. It appears that defendant has raised this particular issue in response to the trial court's reliance on *Witherell v. Weimer* (1981), 85 Ill. 2d 146 (*Witherell I*) and *Witherell v. Weimer* (1987), 118 Ill. 2d 321 (*Witherell II*). The trial court cited these two cases as the basis for reversal of its conclusion that Byron's cause of action was barred by the Code's statute of limitations. In pertinent part the *Witherell* cases found that the plaintiff-patient should be given an opportunity to prove the allegations upon which she sought to estop the defendant-doctor from asserting a statute of limitations defense. In so finding, the court noted that the doctor-patient relationship is fiduciary in nature and one in which the patient places great reliance on the doctor. *Witherell*, however, did not make a fiduciary relationship an element of estoppel. Defendant seems to recognize this when it characterizes a fiduciary relationship as a factor the courts "will consider" and remarks that evidence of such a relationship "lends support for a case of equitable estoppel." In sum, the absence of a fiduciary relationship between Dunham and Byron is not fatal to Byron's estoppel argument.

Defendant's second argument focuses on the element of estoppel which calls for reasonable reliance. Dunham asserts that the "stand-still" agreement on which Byron relies, if there was such an agreement, was void and unenforceable. Furthermore, according to the argument, Byron and Dunham dealt at arm's length, and Byron should be charged with knowledge that the agreement was not valid. Defendant bases this argument on the statute of limitations set forth in the Code:

"An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." Ill. Rev. Stat. 1989, ch. 26, par. 2—725(1).

Dunham claims the language prohibiting extension of the statute of limitations reflects a public policy against expanding the statutory time limit and posits that any contract which purports to expand should not be enforced on any grounds, including grounds of estoppel. Defendant then characterizes the "stand-still" agreement as an attempt to extend the Code's time limit and urges that Byron should not be allowed to claim that it reasonably relied on what it knew or should have known to be an improper agreement. The culmination of defendant's argument is that, because the agreement is unenforceable as a matter of public policy, Byron cannot show the reasonable reliance element of estoppel. We do not agree with defendant's characterization of the parties' agreement.

Dunham correctly cites *George v. City of Danville* (1943), 383 Ill. 454, for the proposition that all parties, when dealing at arm's length, are charged with knowledge that contracts which violate the public policy of the State are invalid. Defendant also correctly posits that the law in existence when a contract is executed is considered a part of the contract the same as if it were incorporated in the contract. (*Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 504.) In both *George* and *Denton* the courts refused to apply estoppel to prevent a party from repudiating a prior contract, even though the party seeking estoppel had relied to its detriment on that contract. The court's decision in *Denton* turned on a finding that the parties' agreement was in clear violation of a statute and, therefore, contrary to public policy. Similarly, in *Denton* the court found that the applicable statute had not been followed in modifying a contract and determined that the injured party should be held to be aware of the relevant statutory limitations. In our opinion *George* and *Denton* are not controlling in the present case because the

agreement between Byron and Dunham was not made in violation of the statute.

■■ The basic and most fundamental principle of statutory construction is to give effect to the intent of the legislature. (*American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 238; *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41.) Courts should examine first the language of the statute as the best indication of the intent of the drafters. (*American Country Insurance Co.*, 127 Ill. 2d at 238; *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151.) If the statutory language is clear, the court must give it effect and need not look to extrinsic aids for construction. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) These principles control our discussion of the Code's statute of limitations.

The language of section 2—725(1) on which Dunham relies provides that the parties "may not extend" the period of limitation "[b]y the original agreement." The original contract for sale of the heating/ cooling unit to Byron was executed in 1980. Dunham does not contend that the original contract contained a limitation period different from that provided in the Code. The dispute over applicability of the statute of limitations arises from the alleged stand-still agreement, which was not a factor in this case until 1985. Thus, on its face, the statute does not prohibit an agreement such as the one at issue here.

■■ Moreover, we think the legislature's use of the word "original" reflects a deliberate and careful choice which was meant to describe precisely the scope of applicability of the statutory time limit. Evidently the legislature wished to impose the four-year statute of limitations specifically on original agreements. Had the legislature intended for the restriction to apply across the board it would have been easy enough—easier, in fact, than adding the word "original"— simply to indicate that "by agreement" the parties may not extend the period of limitation. The plain language of section 2—725(1) reveals an intent to prevent parties from establishing their own, extended limitation period at the outset of their agreement, in disregard of the limit set forth in the statute. By clearly referring to the initial contract, the legislature appears to have left open the door for parties, such as Byron and Dunham in this case, to suspend the running of the statute in the event they recognize the possibility that more time might enable them to resolve their differences. All in all, we are not persuaded that the six-month stand-still agreement constituted a violation of public policy as embodied in section 2—725(1).

We do not believe, either, as urged by Dunham, that the agreement conflicts with the spirit of section 2—725(1). The purpose of statutes of limitations is not to shield a wrongdoer but to provide a defendant fair opportunity to investigate factors giving rise to liability while such evidence is still discoverable, *i.e.*, before the facts are obscured by the lapse of time or the death, departure, or defective memory of witnesses. (*Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 762.) Surely, in this case the purpose of the statute was not frustrated by the parties' agreement. The record reflects that all the parties involved had been actively trying to find a solution to the problems with the heating/cooling system almost from the time it was installed, or at least since the first heating season. Dunham was one of those parties. Consequently, it is reasonable to believe Dunham was aware of and had access to evidence which might be discoverable, or perhaps was discovered, throughout the period of limitations. Too, Dunham would likely have been aware of the status of significant witnesses and could have taken steps to preserve testimony if it became necessary.

The stand-still agreement was suggested only as the end of the four-year time period approached and only as a method of gaining time to resolve matters. There is significant indication in the record that the parties believed they could settle their dispute without litigation. Thus, the six months' extra time was not intended to make it more difficult for Dunham to defend itself in the event Byron brought suit. As we see it, the agreement worked no violence even to the spirit of the statute of limitations. In the absence of conflict between the agreement and the statute, Byron's knowledge of the statute does not bar the application of estoppel. Consequently, Byron is not precluded, as a matter of law, from showing that it reasonably relied on the alleged stand-still agreement with Dunham.

Having decided the certified questions favorably to Byron, we need only further note that estoppel is ordinarily a question of fact, to be determined by the trier of fact (*Lawrence v. Board of Education of School District 189* (1987), 152 Ill. App. 3d 187, 201). Only where there is no dispute as to the material facts, and only one inference can be drawn from the facts, does estoppel become a question of law. (*Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365, 369.) However, if the facts are contested or if reasonable minds might draw different inferences from undisputed evidence, estoppel becomes a question of fact. *Pantle*, 61 Ill. 2d at 369.

In order to discover the legal posture of the estoppel issue in this case, we have carefully reviewed the complaint, motions for sum-

mary judgment, replies to the motions, and the parties' various supporting memoranda. We find that Byron alleged a series of facts to support its claim that it agreed to forestall filing a suit in return for Dunham's commitment not to raise a limitations defense. Dunham does not appear to dispute these facts in and of themselves. However, it is abundantly clear in both the record and the parties' appellate briefs that they draw vastly divergent inferences from the facts and that their differing interpretations go to the heart of Byron's estoppel argument. Under these circumstances the question of the presence of estoppel is to be decided by the fact finder. (*Pantle*, 61 Ill. 2d at 369.) Also, since differing inferences can be drawn from the material facts, summary judgment was properly denied. (*Certified Mechanical Contractors, Inc. v. Wight & Co.* (1987), 162 Ill. App. 3d 391, 400.) In our view Byron is entitled to try to prove the allegations which comprise the basis for its estoppel argument. See *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 160.

The additional issues raised by Byron, which relate to the applicability of the Code's statute of limitations, are beyond the scope of the questions certified by the trial court. Consequently, they are also beyond the proper scope of this review. Supreme Court Rule 308 (134 Ill. 2d R. 308) is an exception to the general rule that only final judgments are appealable and, therefore, should be exercised sparingly. (*Koch v. Spalding* (1988), 174 Ill. App. 3d 692, 698; *People v. Pollution Control Board* (1984), 129 Ill. App. 3d 958, 965.) A court allowing an appeal under Rule 308 may not expand on questions that were brought before it by the circuit court. (*Koch*, 174 Ill. App. 3d at 698; *Getto v. City of Chicago* (1981), 92 Ill. App. 3d 1045, 1048.) At any rate, in light of the conclusion we have reached on the estoppel issue, we see no need to discuss any of the other issues raised.

Based on the reasoning set forth above, the order of the circuit court of Ogle County denying reconsideration of defendant's motion for summary judgment is affirmed, and this matter is remanded for further proceedings.

Affirmed and remanded.

NICKELS and INGLIS, JJ., concur.