*In re* ESTATE OF LYLE KING, Deceased (Erma D. Corder *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. Leona Emagene Clark, as Ex'x of the Estate of Lyle King, Deceased, Defendant-Appellee and Cross-Appellant (Donna P. Powell *et al.*, Defendants)).

Fifth District No. 5—91—0612

Opinion filed June 10, 1993.

CHAPMAN, P.J., dissenting.

Ray Fehrenbacher, of Fehrenbacher Law Offices, of Olney, for appellants.

Morris Lane Harvey, of Law Offices of Morris Lane Harvey, of Fairfield, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiffs, Erma D. Corder, Ethel M. Walker, Joy Lyle Walter, Jettie Ola Howard, and William A. Walker, appeal from the July 12,

1991, judgment of the circuit court of Wayne County granting summary judgment on plaintiffs' second amended petition to contest will, in favor of defendant, Leona Emagene Clark, as executrix of the estate of Lyle King, deceased, and other named defendants who were legatees and devisees under the last will and testament of Lyle King. The executrix cross-appeals from the July 24, 1991, order of the circuit court of Wayne County denying her motion for attorney fees pursuant to the provisions of Supreme Court Rule 137 (134 Ill. 2d R. 137). For reasons stated as follows, we affirm.

The decedent, Lyle King, and his wife, Beatrice L. King, executed a "Joint and Mutual Last Will and Testament" on March 6, 1986. The joint and mutual will provided that upon the death of each of the joint testators, his or her debts, expenses of administration, and funeral expenses were to be paid and that each of the joint testators devised and bequeathed all of his or her estate to the survivor. The joint and mutual will provided in article III that upon the death of the last joint testator, all of the rest, residue, and remainder of the joint testators' estates would be divided in equal shares and devised to 17 named individuals. The record indicates that the 17 individuals were the then-prospective heirs of Mr. and Mrs. King, six of those individuals being nieces and nephews of Lyle King and the remaining 11 individuals being nieces and nephews of Beatrice L. King. Article III further provided that if any of the above-named individuals should predecease the last of the surviving joint testators, then his or her share should go to that individual's descendants, *per stirpes*. Finally, the joint and mutual will named Leona Emagene Clark, from Mrs. King's side of the family, and Melvin Donal Walker, from Mr. King's side of the family, as coexecutors of the estate and provided that if either person could not serve as a coexecutor then there should be a successor named from that respective side of the family.

Beatrice L. King predeceased her husband, Lyle King, who died on September 4, 1989. A petition for probate of Mr. and Mrs. King's joint and mutual will was filed by Leona Emagene Clark on October 19, 1989. Melvin Donal Walker, one of the six named individuals from Mr. King's side of the family and named coexecutor, also predeceased Mr. King. The record indicates that plaintiffs, the remaining five named individuals from Mr. King's side of the family, refused to serve as successor coexecutor and refused to consent to the probate of the joint and mutual will. The will was admitted to probate, and Leona Emagene Clark was appointed sole representative of the estate on November 17, 1989.

The record indicates that the aggregate value of the estate was approximately $300,000. Plaintiffs, as the heirs of Lyle King and named legatees under the joint and mutual will, and the remaining legatees under the joint and mutual will received notices from the executrix on November 20, 1989, of the admission of the will to probate and of their right under section 8—1 of the Probate Act (Ill. Rev. Stat. 1989, ch. 110½, par. 8—1) to contest the validity of the will.

On February 6, 1990, the attorney for the executrix sent letters to the legatees under the will stating that the executrix had to make arrangements for the disposition of the tangible personal property of the estate and thought that there were some items which the legatees would want to retain in the family rather than to have to dispose of them at a sale. The letter itemized sentimental memorabilia or heirlooms such as Bibles, funeral books, photographs, an afghan, a dinner bell, a marriage license, and other records. The executrix recommended that certain items having a connection to Mrs. King be turned over to her to be divided among the legatees on Mrs. King's side of the family and that the remaining items having a connection to Mr. King be turned over to Ethel M. Walker to be divided among the legatees on Mr. King's side of the family. The letter stated that all legatees would have to approve of the distribution as recommended and each legatee would further have to agree that he or she was deemed to have received, for purposes of distribution of the assets of the estate, a share equal in value to the share received by each other legatee. Finally, the letter reiterated that unless all legatees agreed to distribution as outlined in the letter, the executrix would have to sell or otherwise dispose of the named articles. "Entry of Appearance and Consent" forms were enclosed with the letters to the legatees. The record indicates that each of the five plaintiffs signed a consent to the executrix making distribution of the tangible personal property of the estate as recommended by the executrix in the February 6, 1990, letter from her attorney.

Plaintiffs filed their petition to contest the joint and mutual will on May 17, 1990. Following dismissal of this petition and the first amended petition to contest will, plaintiffs filed their second amended petition to contest will on February 4, 1991. The three-count second amended complaint alleged that the joint and mutual will was invalid based on lack of testamentary capacity of Beatrice King and/or Lyle King and on undue influence of the joint testators on the part of Leona Emagene Clark.

The record indicates that plaintiffs' attorney received a letter dated September 24, 1990, from an attorney representing one of the

defendants in the case urging that, under the doctrine of election, the will contest could not be maintained because plaintiffs had received a benefit under the will. The letter cited as authority *Kyker v. Kyker* (1983), 117 Ill. App. 3d 547, 453 N.E.2d 108, and *In re Estate of Joffe* (1986), 143 Ill. App. 3d 438, 493 N.E.2d 70. Under the doctrine of election, one cannot simultaneously accept benefits conferred by a will while setting up claims contrary to the terms of the document itself. (*Joffe*, 143 Ill. App. 3d at 440, 493 N.E.2d at 72.) Neither the first nor the second amended petition made any allegations referring to facts constituting any exception to the doctrine of election. Plaintiffs made no tender of the property received from the estate to the executrix with the filing of either the first or second amended petition to contest will.

The executrix filed a motion for summary judgment on the second amended petition to contest will on March 13, 1991. She attached to the motion the affidavits of herself and her attorney, copies of the February 6, 1990, letter from her attorney, and the consents signed by plaintiffs. Based on these affidavits, the executrix contended there was no material issue of fact that she had proposed a partial distribution of personal property under the estate to each legatee including the plaintiffs. In addition, the executrix urged there was no material issue of fact that plaintiffs had consented to this partial distribution when they filed their written consents with the court. The executrix further urged that the consents received from all of the legatees, including plaintiffs, established that the partial distribution she suggested in the February 6, 1990, letter was carried out and that each of the plaintiffs had acknowledged receiving a partial distribution of equal value to each of the other legatees. Based on these uncontested facts, the executrix contended that she was entitled to judgment as a matter of law because, by consenting to the partial distribution, plaintiffs had acknowledged that each had received a benefit equal to the benefit received by each of the other legatees under the will, had voluntarily accepted a beneficial interest under the will, and as a matter of law were held to have ratified and confirmed the entirety of the will which conferred the benefit accepted by them, citing *Kyker* and *Joffe*. The executrix further contended that a beneficiary who accepts a bequest under the will is estopped from asserting any claim inconsistent with the validity of the will and that the acceptance of benefits under the will operates as an election as a matter of law on the part of plaintiffs to ratify the will and may not be rescinded where, as here, the plaintiffs have continued to retain the benefits obtained pursuant to the will, citing *Kyker* and *Joffe*. Because plaintiffs have at no time

offered to return any of the proceeds from the partial distribution, the executrix contended, their election must be deemed final.

Plaintiffs filed an objection and response to the executrix's motion for summary judgment. Plaintiffs stated in this pleading that plaintiffs had refused to act as a coexecutor by virtue of their position with respect to the will. Plaintiffs also argued that the personal property items distributed were not the subject of any specific bequest but merely personal possessions of Lyle King which plaintiffs did not want the executrix to sell. Plaintiffs further argued that the personal property items received by them would have been distributed to them in the event their will contest was successful and insisted that they would never have had any interest in the items distributed to the next of kin of Beatrice L. King. Plaintiffs maintained that the attorney for the executrix was aware that plaintiffs were not consenting to the probate of the will and that they refused to sign consents to probate the will and to serve as coexecutor, but said attorney failed to inform plaintiffs of the executrix's position with respect to distribution of the personal effects, if, in fact, it was her intention to "outsmart" the plaintiffs with respect to their position on the will. Plaintiffs also argued that distribution of the personal effects caused no harm or prejudice to the defendants in the sense that they have not changed their position or taken action on the basis of the distribution which should work any equitable estoppel against the plaintiffs. Plaintiffs stated that if the court ruled that the distribution of the personal effects was somehow an "acceptance of a specific bequest under the will," plaintiffs offered to immediately tender and return the personal effects. No counteraffidavits were filed by plaintiffs in connection with their objection and response to the motion for summary judgment.

We have not been provided with a transcript of the hearing on the motion for summary judgment which was held on April 29, 1991. The trial court ruled by docket entry dated April 30, 1991, however, that the executrix's motion for summary judgment was granted. The court noted that plaintiffs had filed no affidavits raising any issue that their acceptance of benefits under the will was not made with full knowledge of the relevant facts and circumstances, including the contents of the will and circumstances surrounding execution of the will, or that their acceptance was procured or induced by fraud or mistake. Accordingly, the court found that there was no genuine issue as to any material fact and that defendants were entitled to judgment as a matter of law on the second amended petition to contest will. The court ruled that defendants should have judgment against plaintiffs

and directed preparation of a judgment order by counsel for the executrix. The court entered the judgment order on July 22, 1991.

The executrix also filed a motion for attorney fees pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611), on March 13, 1991, which the court heard on July 22, 1991. The court noted at that hearing that section 2—611 had been superseded by Supreme Court Rule 137 (134 Ill. 2d R. 137 (effective August 1, 1989)). The court therefore ruled on the executrix's motion under the provisions of Rule 137.

The executrix claimed in her motion that the attorney's letter dated September 24, 1990, to plaintiffs' attorney specifically advised of case law which, as a matter of law, would preclude plaintiffs from proceeding with their will contest. Notwithstanding such notice, the executrix claimed, plaintiffs proceeded to file both a first and second amended petition to contest will, both of which had been executed by counsel pursuant to the provisions of section 2—611 (Rule 137). The executrix concluded that these facts indicated that the first and second amended petitions to contest will were executed in violation of the provisions of section 2—611 (Rule 137), and pursuant to said rule the court should impose sanctions including, but not limited to, "the warning cost," expenses, and attorney fees incurred by the estate in the defense of this action.

Plaintiffs filed no response to the motion for attorney fees and did not appear at the hearing on the executrix's motion. However, the court stated that it would take judicial notice of the court file, including, but not limited to, arguments presented and evidence presented at any previous court hearing.

The executrix presented at the hearing the testimony of the attorney for the executrix who was retained to represent the executrix in the probate proceedings. The attorney testified that, in the course of handling matters for the estate, there was a partial distribution of some personal property and that the plaintiffs in the will contest had accepted their part of the partial distribution. The attorney stated that he had received a copy of the letter dated September 24, 1990, which was sent by an attorney for one of the will contest defendants to the attorney for the plaintiffs. A copy of this letter was admitted into evidence. The executrix also offered the affidavit of her attorney in the will contest proceedings regarding the attorney fees which had been expended by the estate in the defense of the proceedings, which was also admitted into evidence. The executrix reiterated in closing argument that the attorney's letter served as notice to plaintiffs' attorney that plaintiffs could not, as a matter of law, contest the will

after having accepted benefits thereunder, but that the plaintiffs persisted in the will contest and made no attempt to tender return of the benefits. Moreover, without addressing the rationale outlined in the attorney's letter or making a reasonable inquiry into the legal basis for their pleadings, plaintiffs' attorney signed two successive amended petitions. The court ruled by docket entry dated July 24, 1991, that the executrix's motion for attorney fees would be denied because the court found a *"bona fide* issue as to existing law applicable to facts."

In their appeal, plaintiffs contend that they were not precluded from maintaining the will contest by their acceptance of the distribution of some "sentimental" items from the estate, as proposed by the executrix, because such items were clearly not a benefit or bequest bestowed by the will. Plaintiffs argue that the distribution was by family and not by individual and there can be no viable argument that their acceptance of the executrix's proposal constituted a knowing and informed "election" under the will. Plaintiffs further state that they offered to return the sentimental items in the event the court deemed under the facts and circumstances of this case that continued possession constituted an "election" under the will. Plaintiffs cite *In re Estate of MacLeish* (1977), 46 Ill. App. 3d 957, 361 N.E.2d 618, for the proposition that where the facts and circumstances do not clearly indicate whether an informed election has taken place, the court may order the return of the items within a certain period of time or the recipient will be deemed to have made an election.

The cases cited by the executrix, as legal authority for a finding by the court under the doctrine of election that plaintiffs had ratified and confirmed the entirety of the will by the voluntary acceptance of a beneficial interest thereunder, were *Kyker v. Kyker* (1983), 117 Ill. App. 3d 547, 453 N.E.2d 108, and *In re Estate of Joffe* (1986), 143 Ill. App. 3d 438, 493 N.E.2d 70. Though not specifically cited by the court in its docket entry memorandum of decision or in the July 12, 1991, judgment order, we will presume that the trial court based its decision on the executrix's motion for summary judgment on the authority of *Kyker* and *Joffe*. Plaintiffs argue on appeal that these two cases are not applicable because, unlike the instant case, the wills in the *Kyker* and *Joffe* cases provided for specific cash bequests which were accepted by the devisees while attempting to maintain a will contest. Plaintiffs note that the trial court recognized the ambiguity of the law on the doctrine of election when applied to the facts and circumstances of this particular case in ruling as it did on the executrix's motion for attorney fees pursuant to Rule 137. Plaintiffs argue that by stating in its docket entry memorandum of decision that a

"*bona fide* issue as to existing law applicable to facts" was found, the court in effect found a genuine issue of material fact which should have precluded the entry of summary judgment in the executrix's favor.

■ Summary judgment shall be rendered if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) The purpose of summary judgment proceedings is not to try an issue of fact, but to determine whether one exists. (*Golden v. Marshall Field & Co.* (1985), 134 Ill. App. 3d 100, 101, 479 N.E.2d 1211, 1212.) As noted above, the executrix supported her motion for summary judgment by affidavits from herself and the attorney for the probate estate, but plaintiffs filed no counteraffidavits. If a party moving for summary judgment supplies facts which, if not contradicted, would entitle such party to a judgment as a matter of law, the opposing party cannot rely on his complaint or answer alone to raise genuine issues of material fact. (*Golden*, 134 Ill. App. 3d at 101-02, 479 N.E.2d at 1212.) A plaintiff has an affirmative duty, on defendant's motion for summary judgment, to bring forth all facts and evidence that would satisfy his burden of proving the existence of a cognizable cause of action. (*Golden*, 134 Ill. App. 3d at 102, 479 N.E.2d at 1212.) The affidavits offered by the executrix concerned the requisite factual proof of the affirmative defense pled by the executrix to plaintiffs' second amended complaint. Proof of such defense would negate plaintiffs' right of recovery under their complaint. The executrix argues that plaintiffs failed to meet their burden of showing, at a minimum, that a genuine issue of material fact existed, by their failure to produce any counteraffidavits to the motion for summary judgment.

■ As we discern plaintiffs' argument on appeal, however, they dispute whether acceptance of decedent's personal effects from the residuary estate, as opposed to a specific bequest, constitutes acceptance as a matter of law of a benefit under the will. Resolution of that issue requires analysis of the courts' decisions in *Kyker* and *Joffe* and other relevant case law.

Under the provisions of the will in *Kyker*, the testator devised $500 to the petitioner, who was one of her grandchildren, as well as other specific monetary bequests to one of the testator's sons and to other grandchildren. The residuary estate was devised to another of the testator's sons, who was also named executor. The executor

issued a check to petitioner in the amount of $500 in satisfaction of her bequest under the will, and the check was endorsed and cashed by the petitioner approximately four months after petitioner instituted a will contest proceeding against the estate. The executor filed a motion to dismiss the will contest petition, asserting that petitioner was estopped from maintaining the action because she had accepted benefits of the will. The appellate court affirmed the trial court's dismissal of the will contest petition under the general rule of estoppel to attack the validity of a will under which a beneficiary has accepted a bequest.

In *Estate of Joffe*, the testator's will provided for $2,500 legacies for each of her five grandchildren, for a $2,000 legacy to the testator's friend, and for the remainder of the estate to be devised to the testator's sole surviving daughter. Each of the specific legatees was sent a check in full satisfaction of his or her legacy. All of the legatees, including the two grandchildren who later filed a petition to contest the will, cashed their checks. The trial court granted the executor's motion to dismiss the will contest petition, finding that the petitioners had ratified the will by their acceptance of the bequests, and the appellate court affirmed.

It is true that the petitioners in *Kyker* and *Joffe* received specific monetary bequests under the will while the individual plaintiffs in the instant case were equal beneficiaries under the will of one-seventeenth of the decedent's residuary estate. There can be no doubt, however, that the items distributed by the executrix made up a portion of that residuary estate, and so plaintiffs cannot deny that the items received by way of the partial distribution were received "under the will." Moreover, plaintiffs raised no material issue of fact with respect to whether the executrix had suggested a partial distribution of this personal property, that plaintiffs had consented to this partial distribution, that said partial distribution had been carried out, and that each plaintiff had acknowledged receiving a partial distribution of equal value to each of the other legatees. We do not believe that the *Kyker* and *Joffe* cases are inapplicable merely because the bequests were specific rather than general, nor does our reading of those cases lead to a conclusion that the courts intended that their holdings be so limited.

Plaintiffs' argument appears to turn upon the *value* of the legacy or bequest: that because the distributed items of personal property were of "sentimental" value alone, they could not hold any actual value as property of the residuary estate and, accordingly, plaintiffs did not take a "benefit" under the will. We note that

while no Illinois decision has addressed the precise issue raised by plaintiffs in this appeal, other jurisdictions have, with differing conclusions. In *Dickerson v. Murfield* (1944), 173 Or. 662, 147 P.2d 194, the court held that receipt by one of the legatees of a few used sheets and pillow cases and a few antiquated articles of furniture upon which her initials had been placed by the testator did not rise to the dignity of a waiver of the legatee's right to contest the will, notwithstanding that the will gave those articles to her, because waiver is defined as the intentional relinquishment of a known right. In contrast, courts have held that the value of the property is irrelevant to the question of "benefit" under the will. (See *Cennamo v. American Security & Trust Co.* (D.D.C. 1970), 318 F. Supp. 366, *rev'd on other grounds sub nom. In re Estate of Burrough* (D.C. Cir. 1973), 475 F.2d 370.) In *Cennamo*, the district court, applying District of Columbia law, ruled that there was no indication in the estoppel-to-contest-will cases that the amount of the benefits received was controlling.

In *Kyker* and *Joffe* there is no doubt that the petitioners, who received cash from the respective estates, received a benefit under the will and thus made an election under the will. However, as the court noted in *Joffe*, the doctrine of elections, which is based upon equitable principles of estoppel, is designed to address the taking of inconsistent positions under the will and to preempt such activity. We believe that plaintiffs exhibited such an inconsistent position by accepting equal portions of this personal property of the estate and then filing the will contest petition. Moreover, the *Kyker* and *Joffe* cases are based upon principles of estoppel as in *Cennamo* rather than waiver as in *Dickerson*, and so we find under Illinois law that it is the taking of inconsistent positions under the will rather than the value of the property taken under the will which should be controlling.

Plaintiffs have also argued that acceptance of the executrix's proposal for distribution of this property did not constitute a knowing and informed election under the will and so the doctrine of election should not apply in this case. Moreover, plaintiffs insist that they offered to return these items received under the partial distribution if the court deemed their continued possession to be an election under the will.

The petitioner in the *Kyker* case had contended that the general rule of estoppel should be subject to an exception where a legatee tenders back a bequest and no one is prejudiced, such that preclusion or estoppel no longer applies without regard to whether or not

the tender is made in a timely manner or the election to accept was made with full knowledge. The appellate court noted in *Kyker* two well-recognized exceptions or qualifications to the estoppel rule: (1) acceptance of a bequest under a provision of the will must have been made with full knowledge of the relevant facts and circumstances, including the contents of the will and the circumstances surrounding execution of the will; (2) even though a person accepts a benefit under the will, he or she is not precluded from questioning the validity of any provisions that are contrary to the law or public policy. The appellate court also noted that some jurisdictions recognize a third possible exception to the general rule of estoppel if temporary acceptance of the bequest under the will does not prejudice other parties interested in the estate. The court opined that the better view is to permit a contest of the will only where the return of, or offer to repay, a legacy is made prior to instituting the contest proceeding.

The court also noted in *Kyker* that some jurisdictions have held that the repayment of the benefits received under a will that is later challenged as invalid is not required where the contestant's share as heir in the event of intestacy would equal or exceed the amount of the legacy under the challenged will. The court determined, however, that this lack of prejudice argument was made and rejected by the court in *In re Estate of MacLeisch* (1977), 46 Ill. App. 3d 957, 361 N.E.2d 618. The court in *Kyker* agreed with the rationale of the court in *MacLeisch* that acceptance of such a position would require the court to speculate as to what share of the estate the contestant would be entitled to under another will or by intestacy in the event that the challenged will was held to be invalid. The *Kyker* court ruled that lack of prejudice alone is insufficient to permit the rescission of an election to accept benefits under a will made by one with full knowledge of the circumstances. While a beneficiary should be granted a reasonable time after receipt of a bequest in which to make an election to accept or reject it, the court held in *Kyker* that where the beneficiary has made an election to accept the benefits of the will with full knowledge of the relevant facts and circumstances and without that election being induced by fraud or mistake, the beneficiary is bound by that election and cannot change her mind and be permitted to contest the will by tendering back those benefits.

We note that plaintiffs made many of the same arguments as the petitioner did in *Kyker* in their objection and response to the motion for summary judgment, *i.e.*, that the personal property

items would have been distributed to them in the event the will contest was successful and that distribution of the personal effects caused no harm or prejudice to the defendants because they had not changed their position or taken any action on the basis of the distribution which would result in an equitable estoppel against plaintiffs. The reviewing court in *Kyker* rejected those arguments, and we believe the trial court properly rejected those arguments in the instant case. Additionally, under the reasoning of the court in *Kyker*, petitioners should have returned the items received by way of the partial distribution at the time the will contest was filed or within a reasonable time thereafter. We therefore find that plaintiffs' offer to return the items if the trial court found the doctrine of election applicable was woefully tardy.

With regard to the issue of whether plaintiffs' acceptance of the bequests were made with full knowledge, the appellate court found in *Joffe* that because the petitioners alleged lack of testamentary capacity on the part of the testator and undue influence on the part of the executor at the time the will contest petition was filed, they knew at that point in time all the material facts. The *Joffe* court held that because the petitioners neither returned the bequests nor even offered to return them, they must be deemed to have made an election at the time the petition was. filed. Under the reasoning of the *Joffe* case, resolution of whether acceptance of the bequest was made with full knowledge focuses on whether or not the beneficiary knows or is prevented from learning the circumstances concerning *execution of the will*, not the effect of his or her acceptance of the bequest on the legal ability to maintain the will contest action. Under *Joffe* plaintiffs are deemed to know all relevant facts concerning execution of the will at the time the will contest petition was filed. Under *Joffe*, plaintiffs must also be deemed to have made an election at the time they filed their will contest petition.

Plaintiffs maintain, however, that the facts of the instant case indicate that they did not make an informed election under the will and so, under authority of the *MacLeish* case, the doctrine of election is not controlling. In *MacLeish* the testator's son was given the use of a house rent free for his lifetime under the will. The beneficiary had resided in the house for 28 years prior to the testator's death and had paid $200-per-month rental under the terms of the written lease in effect prior to the testator's death. The beneficiary filed a will contest petition approximately six months after the estate was opened but paid no rent for the property after his father's death. The final lease also contained a provision that would make a

holdover tenant a tenant by sufferance at a specified rental per day. The per-day rental was left blank on the lease, however, and no requests were made by the executor for payment of holdover rent. The trial court found that the fair rental value of the property was $875 per month and held that the beneficiary had to either pay the 12 months of back rent at $875 per month or he would be deemed to have made an election under the will. When the beneficiary failed to pay the executor the $10,500 in back rent, the trial court dismissed the will contest petition.

The reviewing court reversed, holding that dismissal of the petition was improper because the beneficiary's "consent" to probate of the will under the ambiguous circumstances presented did not indicate a knowing acceptance of the benefits under the will. The court noted that the first time the beneficiary was afforded an election was when the trial court ordered him to pay the back rent or vacate the premises, or be deemed to have made an election under the will, and this was not a real election because the son was impecunious and unable to pay the large amount of money. The court also noted that there was a dispute with the executor as to whether the beneficiary had vacated the premises; the beneficiary had turned over his keys to the executor but had left certain personal property on the premises.

We see no similar ambiguity involved with the plaintiffs' acceptance of the distribution of property in the instant case. Although plaintiffs argue that their acceptance of the executrix's proposed distribution was by family and could therefore not constitute a knowing and informed election under the will, they failed to dispute the language of their consents by which they affirmed that the distribution they received would be deemed "equal in value to the shares received by the other legatees." Indeed, the consents signed by plaintiffs are clear that plaintiffs agreed with the distribution of tangible personal property of the estate as recommended by the executrix. The affidavits of the attorney and the executrix further establish no genuine issue of fact that the plaintiffs acknowledged by the execution of the consent to distribution that each plaintiff was receiving a partial distribution of equal value to each of the other legatees. We thus find the *MacLeish* case to be distinguishable on its facts.

Plaintiffs appear to be arguing that the executrix should have been required to let them know that if they accepted the proposed distribution they would be deemed to have made an election under the will and would be foreclosed from thereafter contesting the will

in order to accept the bequest with full knowledge of the relevant facts and circumstances. We do not find that the *MacLeish* case establishes such a duty, nor was the executor required to so inform the legatees in the *Kyker* or *Joffe* cases in order for there to be full knowledge of the relevant facts and circumstances. We therefore hold that the trial court properly granted summary judgment for the executrix.

■ In her cross-appeal, the executrix argues that the trial court erred in refusing to grant attorney fees pursuant to the provisions of Supreme Court Rule 137 (134 Ill. 2d R. 137). Rule 137 provides in pertinent part:

"Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is *warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law*, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney fee." (Emphasis added.) (134 Ill. 2d R. 137.)

Rule 137, which superseded amended section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611), is intended to prevent counsel from making assertions of fact or law without support, whether the assertions be written or oral. (*Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 334, 570 N.E.2d 361, 364.) Unlike former section 2—611 of the Code of Civil Procedure, Rule 137 allows but does not require the imposition of sanctions. (Ill. Ann. Stat., ch. 110A, par. 137, Committee Comments, at 101 (Smith-Hurd Supp. 1992).) Trial court decisions on whether to impose sanctions are entitled to considerable deference upon review and will not be reversed on appeal absent an abuse of

discretion. (*In re Marriage of Irvine* (1991), 215 Ill. App. 3d 629, 637, 577 N.E.2d 462, 467.) A trial court exceeds its discretion only where no reasonable person would take the view adopted by the trial court; if reasonable persons could differ as to the propriety of the trial court's actions, then a reviewing court cannot say that the trial court exceeded its discretion. *Lewy*, 211 Ill. App. 3d at 334-35, 570 N.E.2d at 365.

Under Rule 137 the test is what was reasonable under the circumstances; in evaluating the conduct of an attorney or party who signs a pleading or other paper filed with the court certifying that he has made a reasonable inquiry into the basis of the pleading or other paper, the court must determine what was reasonable to believe at the time the document was presented to the trial court, rather than engage in hindsight. (*Lewy*, 211 Ill. App. 3d at 334, 570 N.E.2d at 364-65.) Executrix contends that measured against the standard of objective reasonableness established by Rule 137, it is apparent that the conduct of plaintiffs and their counsel in repeatedly filing the petition and amended petitions to contest the will after having accepted benefits under the will falls well below the standard. Moreover, executrix contends that after being informed in September 1990 of case law which was dispositive of whether their claim was barred, plaintiffs made no argument to the court that such case law was not controlling or distinguishable on its facts, nor did plaintiffs make an argument to the court for any extension of the law which would allow plaintiffs to maintain their action. As the executrix notes, the only document before the court in which plaintiffs indicated to the court the bases upon which they deemed themselves entitled to maintain the action was the "Objection and Response to the Motion for Summary Judgment." These bases included arguments that the estate was not prejudiced and that the executrix's attorney attempted to deceive plaintiffs into accepting such a benefit.

The executrix maintains that the recent decision in *Edwards v. Estate of Harrison* (1992), 235 Ill. App. 3d 213, 601 N.E.2d 862, is dispositive of our decision on this issue. In *Edwards* the plaintiff filed an amended complaint seeking to quiet title to certain real property which was part of the estate, of which she claimed ownership by reason of a 1987 quitclaim deed given to her by decedent on the day he died. Before plaintiff's attorney filed the second amended complaint, however, defendant notified the attorney that there was a strong likelihood that decedent's signature on the deed was a forgery, showing the attorney a report from Steven C. Mc-

Kasson, a professional document examiner, who opined in the report that decedent's purported signature on the 1987 quitclaim deed was not genuine.

Defendant moved for summary judgment on the second amended complaint claiming, *inter alia*, that decedent's signature on the 1987 quitclaim deed was a forgery and so the deed upon which plaintiff claimed ownership of the property was void. McKasson testified on behalf of defendant at an evidentiary hearing that decedent's signature on the 1987 deed was a forgery, but plaintiff produced no witnesses to attest to the authenticity of decedent's signature on the deed. The court granted summary judgment in favor of defendant, dismissing plaintiff's complaint with prejudice, and defendant filed a motion for sanctions pursuant to section 2—611 of the Code of Civil Procedure. Defendant alleged in the motion for sanctions that plaintiff and her attorney had filed a series of false and fraudulent complaints which were not grounded in fact, particularly noting that plaintiff's attorney should have discovered that the signature on the 1987 quitclaim deed was a forgery.

In response to the motion for sanctions, plaintiff stated that prior to the evidentiary hearing her attorney had hired a private investigator to locate the notary public who notarized the deed but had been unable to locate him. The attorney did not provide the name of the investigator or an affidavit describing the steps taken by the investigator to locate the notary public. Plaintiff also claimed that she was financially unable to hire her own handwriting expert. The trial court granted defendant's motion for sanctions, finding that the pleading would not be well grounded in fact if it contained untrue statements of fact with reference to the validity of the quitclaim deed which the attorney knew or reasonably should have known were untrue and that if the attorney had conducted a reasonable inquiry into the facts before filing the complaint he would have discovered that the signature was suspect to a layperson's eye, would have attempted to corroborate the testimony of the single witness who claimed to know decedent's signature, would have produced those corroborating witnesses at the hearing, and if finances so warranted it, would have produced a handwriting expert. The court ordered plaintiff and her attorney jointly and severally liable for defendant's attorney fees, and this judgment was affirmed on appeal.

Similarly, the reviewing court found in *In re Marriage of Irvine* that because the plaintiff had failed to make an inquiry of any kind prior to filing a complaint to recover a debt from the defendant,

sanctions were warranted against plaintiff under Rule 137. The record indicated that prior to filing his complaint for the payment of a $5,500 debt, the plaintiff had first made demand on the defendant at a prior hearing between the parties and had been informed at the hearing that the debt had long since been satisfied. The reviewing court noted that plaintiff was put on notice that his claim would be contested and any reasonable inquiry would have revealed the falsity of the claim, because defendant could have supplied him with copies of checks forwarded to defendant from which plaintiff had deducted the $5,500 which was owed to plaintiff. The reviewing court found that the trial court abused its discretion in determining that plaintiff's error was unintentional and that the pleading was not filed for an improper purpose, because the record was clear that plaintiff had failed to make a reasonable inquiry into the factual basis for his claim.

In the instant case, the executrix contends that after receiving notice in September 1990 from the attorney for one of the will contest defendants that the *Kyker* and *Joffe* cases provided the legal authority for the barring of their claim, plaintiffs failed to make any reasonable inquiry or proffer any legal authority to legitimize their claim and thereafter filed their first and second amended petitions. Thus, under the reasoning of the *Edwards* case, executrix maintains, the trial court abused its discretion in refusing to award Rule 137 sanctions against plaintiffs.

We note that just as in the instant case, the plaintiffs' cases in *Edwards* and *Irvine* were dismissed with prejudice based on summary judgment on the defendants' affirmative defenses. We also note that in both *Edwards* and *Irvine*, the reasonable inquiry which the courts maintained should have been undertaken after the plaintiffs had received notice that their claims were unsupportable involved an inquiry into the *factual* rather than the legal basis for their claims. The reasonable inquiry the executrix urges was not conducted by plaintiffs in the instant case, however, was an inquiry into the legal basis for their claim in light of the executrix's contention that the will contest petition was barred by the doctrine of election. In other words, plaintiffs were not notified of a problem which they would have in factually meeting their burden of proof; they were advised that the executrix would challenge the legal basis for the petition based on the *Kyker* and *Joffe* cases. Plaintiffs' response to the motion for summary judgment indicates their position that the two cases relied on by the executrix were inapplicable and that the doctrine of election was inapplicable based upon the *Mac-*

*Leish* case. That the trial court disagreed with plaintiffs on this legal position does not give cause for a conclusion that plaintiffs failed to make the reasonable inquiry into the legal basis for their claim which is required by Rule 137. As noted above, in ruling on a motion for sanctions under Rule 137, the trial court must determine what was reasonable to believe at the time the pleading was presented to the court, rather than engage in hindsight. (*Lewy*, 211 Ill. App. 3d at 334, 570 N.E.2d at 364-65.) We hold that the trial court did not abuse its discretion in denying the executrix's motion for Rule 137 sanctions.

For the foregoing reasons, the July 12, 1991, judgment and the July 24, 1991, order of the circuit court of Wayne County are affirmed.

Affirmed.

RARICK, J., concurs.

PRESIDING JUSTICE CHAPMAN, dissenting:
"[T]here's always words on the board, words and words and more words in their dusty slanted lines of white and yellow, erasers filled with words gone old or bad or both ***."
J. McCorkle, *Words Gone Bad*, in Crash Diet, at 183 (1992).

Election and equitable estoppel—the "E" words.

The plaintiffs accepted some family Bibles, photographs, funeral books, personal records, an afghan, and a dinner bell. The majority holds that, by accepting these items, the plaintiffs made an irrevocable commitment to the validity of the will to an estate with a value of over $300,000. I dissent.

The majority discusses both election and estoppel in reaching its conclusion. As I understand it, the majority is saying that the doctrine of election of remedies will not allow plaintiffs to both accept under and to challenge the will. If I were to ask why, I believe the majority would say, "Because those positions are inconsistent." If I were to point out that inconsistent pleadings are specifically permitted by common law (see *Fitchie v. Yurko* (1991), 212 Ill. App. 3d 216, 570 N.E.2d 892) and the Civil Practice Law (735 ILCS 5/2—604, 5/2—613 (West 1992)) and ask, "Why should the rule be different in this case?" the majority might properly state (as it does at 245 Ill. App. 3d at 1098) that "the doctrine of elections *** is based upon equitable principles of estoppel."

Assuming that was the answer of the majority, I would still have to persist with my series of whys. The majority might prefer the Bud Dry slogan, "Why ask why?" but if we are not here to ask why, then why are we here? So continuing, I must ask, "Why is estoppel invoked to prevent the presentation of inconsistent positions?" The answer must be, and is, to prevent prejudice to the opponent who has relied upon the earlier inconsistent position.

For example, a plaintiff files a complaint based upon alternative, inconsistent theories. These inconsistent pleadings are not condemned, the plaintiff is not castigated, the complaint is not dismissed; the case proceeds to trial with all parties fully informed, and a resolution is reached. But, if the plaintiff had filed only one count and proceeded on that count until the last day of her case and then sought leave to amend to plead the inconsistent theory, the defendant might well successfully resist the amendment on estoppel grounds.

There may be other reasons for invoking estoppel, such as judicial efficiency (see *National Commercial Banking Corp. of Australia, Ltd. v. Harris* (1988), 125 Ill. 2d 448, 532 N.E.2d 812) or to prevent fraud and injustice (see *Byron Community Unit School District No. 226 v. Dunham-Bush, Inc.* (1991), 215 Ill. App. 3d 343, 574 N.E.2d 1383), but none is presented in this case.

Even if some vague notion of the prevention of unfairness based on inconsistency were the reason relied upon by the majority, I see no unfairness in this case. This case does not involve that English favorite, the peppercorn.

> "**Peppercorn.** A dried berry of the black pepper. In English law, the reservation of a merely nominal rent, on a lease, was sometimes expressed by a stipulation for the payments of a peppercorn." (Black's Law Dictionary 1022 (5th ed. 1979).)

The peppercorn has legal meaning beyond its value. While the items accepted by the plaintiffs certainly had symbolic significance, their significance was personal, not legal. When the plaintiffs accepted the objects they were not saying, "We get the dinner bell, you get everything else"; nor could their gesture be reasonably understood as such a statement.

I close with my final question, "Why invoke the doctrine of estoppel if no reason is presented for its invocation?" My answer, of course, is that I would not, and therefore, I dissent.