In re ESTATE OF BRUCE MacLEISH, Deceased.—(HUGH MacLEISH, Plaintiff-Appellant, v. THE NORTHERN TRUST COMPANY et al., Defendants-Appellees.)

First District (3rd Division)   No. 61829

Opinion filed March 9, 1977.—Rehearing denied April 25, 1977.

Nat M. Kahn and Robert M. Bollman, both of Chicago, for appellant.

Sidley & Austin, of Chicago (Alice M. Bright, J. Robert Barr, and Robert A. Malstrom, of counsel), for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Hugh MacLeish, plaintiff, is the son of Bruce MacLeish who died on October 7, 1973. In addition to Hugh MacLeish, Bruce MacLeish left surviving him three grandchildren, children of a daughter who predeceased him. The will of Bruce MacLeish gave Hugh MacLeish the use of a home in Glencoe rent free for his lifetime. The will also provided that Hugh MacLeish was to receive the entire net income of 10% of the residuary trust estate as long as he should live. Only the former provision of the will has any bearing on the appeal. The plaintiff filed a suit contesting the will on March 1, 1974. The defendants are the trustees, executors and beneficiaries. The dismissal of that lawsuit by the trial court on motion of the defendants is the subject matter of this appeal. The dismissal was based on the doctrine of the election under a will in that it is asserted that Hugh MacLeish elected to accept the benefits under the will by occupying the premises rent free and therefore should not be allowed at the same time to maintain a lawsuit contesting the validity of the will.

The plaintiff had occupied the home in Glencoe under written leases from his father continuously for 28 years. The last lease expired on Decemer 31, 1972. The lease provided for payments of $200 a month which the plaintiff continued to make after the expiration of the lease and until his father's death on October 7, 1973. The lease contained a holdover provision that would make a holdover tenant a tenant by sufferance at a specified rental per day. However, the amount of per day rental was left blank on the lease form. No requests were made for payments of rent by the executors and none were offered by the plaintiff after the death of Bruce MacLeish. Hugh MacLeish remained in the home until December 15, 1974.

On March 1, 1974, the plaintiff filed the instant lawsuit. On May 8, 1974, the executors filed a motion to dismiss alleging in pertinent part; that Hugh MacLeish having full knowledge of the provisions of the will consented in writing to proof of the will and to the issuance of letters testamentary; with full knowledge informed the executors and other beneficiaries that he would not contest the will; with full knowledge accepted the benefit provided for him under the will by using and occupying the premises as his home rent free; and that the executors changed their position to their prejudice by taking no action to terminate the tenancy by sufferance existing at the date of Bruce MacLeish's death under the lease of the home. The motion was supported and opposed by various affidavits.

On October 8, 1974, a hearing was held on the motion to dismiss. At the conclusion of the hearing the trial court indicated that the acts were not of such great moment as to be of any detriment to any other party and were of not such great consequence as to overcome the rights that a party has by virtue of the will contest provisions of the Probate Act. (Ill. Rev. Stat. 1973, ch. 3, par. 90 *et seq.*) Counsel for defendants then commented that the court disregarded "the conduct of the plaintiff during the past year as far as constituting a binding election on his part" and made an oral motion, as defendants point out on appeal, to require Hugh MacLeish to do equity by making an election. Further, defendants requested that the estate be reimbursed for the fair rental value of the property for the year that Hugh MacLeish had occupied it after the death of Bruce MacLeish.

On the morning of October 16, 1974, the plaintiff challenged the legal right of the executors to demand rent. The plaintiff's position was that Hugh MacLeish was in poor financial condition and the collection of rent would not mean much to the estate but would be of considerable significance to him. Hugh MacLeish asked to proceed with evidence concerning his financial position. Defendants responded that the financial inability to pay rent had no bearing whatsoever on the issues. The court after hearing testimony found the fair rental value at $875 a month.

A proposed order was presented at a court hearing that afternoon. At that time an offer of proof was made by the plaintiff of his financial condition. The proposed order presented by the defendants provided that Hugh MacLeish was to surrender the premises within 30 days and to pay to the defendants $10,500 being 12 months rent at $875 per month. The order further provided that if Hugh MacLeish failed to pay and to vacate "he shall be deemed to have elected to accept the benefit given him * * * under the will and this supplemental proceeding to contest the will of Bruce MacLeish shall thereupon be dismissed * * *." The plaintiff stated that he did not believe it was fair to provide that a man who was financially unable should have his suit dismissed if he failed to pay $10,500. The exact interpretation of that order is subject to some controversy. The attorney for the defendants contended at the time that all the court was doing was giving Hugh MacLeish 30 days to make his election. He could either pay the rent or he could vacate the premises. The position of the defendants was reiterated at the hearing held on October 22, 1974. The court commented that it was charging the plaintiff with making an election between accepting the benefits of the will and contesting the will. The tendered order of October 16 was entered on October 22, 1974. At that hearing the plaintiff commented that it was a very stringent provision and that the court was requiring him to do two things, vacate and pay $10,500 and if he did not pay the suit would be dismissed. The court commented that the court was charging him with making an election.

On motion of the plaintiff on November 8, 1974, the time for making an election was continued until December 15, 1974, and the rental payment was increased to $11,605 to cover the extra days the plaintiff would be occupying the house. On November 18, 1974, the plaintiff filed a motion to vacate the orders of October 22 and November 8, 1974. This motion was continued until December 16, 1974.

On December 16, 1974, it was represented to the court by the defendants that there was a question as to whether the property had been vacated because there was still present on the property certain furniture, clothing and other items. Witnesses were presented along with pictures of the personalty that was left. There was testimony that the house keys were tendered the day before although no keys were presented for certain closets that were locked. The plaintiff was not present on the premises. There was no tender of any money to the defendants.

The defendants have consistently maintained that almost identical to the facts and controlling here, is the case of *Fishburn v. Green* (1920), 291 Ill. 350, 126 N.E. 115. The *Fishburn* case says at page 353:

> "One who accepts a provision for his benefit under a will is precluded from attacking other lawful provisions of the same will.

(*Elmore v. Carter*, 289 Ill. 560.) By accepting its benefits he admits the instrument to be the will of the testator, and he cannot both take under it and make a claim against its terms."

This proposition has been reiterated many times and emanates from the case of *Wilbanks v. Wilbanks* (1856), 18 Ill. 17. The *Wilbanks* case also states, at page 21, that "The party is entitled to a full knowledge of the circumstances, and of the situation and value of the estates or provisions made; and an election made in actual ignorance of material facts will not preclude the party from exercising the right anew upon obtaining full information." The proposition concerning the knowledge of the party taking under the will was restated in *Pope v. Kitchell* (1933), 354 Ill. 248, 188 N.E. 451. With this in mind we will examine the proceedings in the trial court.

■■ The first hearing was on October 9, 1974, and the court denied the motion to dismiss and held that the plaintiff had not made an election up until that time. We think the holding was quite proper considering the fact that the plaintiff had been on the premises under a written lease which had provisions concerning holdover tenancies. We do not believe that the signing of the consent nor the retention of counsel in December 1973 nor the filing of the lawsuit on March 1, 1974, under the rather ambiguous circumstances here indicated any knowing acceptance of the benefits under the will.

■■ Once the court had indicated that it made the above finding the defendant made an oral motion that the plaintiff be required to make an election and do equity by reimbursing the estate for the fair rental value of the property for the time that Hugh MacLeish occupied the property up to the death of Bruce MacLeish. The plaintiff opposed this position stating that this was a court of equity and that he was in poor financial condition. If the will was upheld, he asserted, he was entitled to the property anyway and in the event that he was successful in his lawsuit attacking the will as an heir of Hugh MacLeish he would receive considerably more than what would be the fair market value to the estate for the time he occupied the house. The court, quite properly, did not accede to the position of the plaintiff. The plaintiff had not sustained his position because there is no evidence as to whether or not other wills exist (although there are assertions of counsel that there are other wills) or what the terms of any other wills might be. To sustain the plaintiff's position the court would have to speculate as to whether, if the plaintiff was successful in his will contest, the property would pass by intestacy.

■■ The effect of the order of October 22, 1974, as expressed by the court and as interpreted by the defendants was to compel the plaintiff to make an election under the will. We believe that under the circumstances it was the first time that the plaintiff was afforded an election and it was

not a real election. The plaintiff's counsel argued that his client was impecunious and unable to pay the amount of money ascertained by the court in order to maintain his lawsuit. On appeal he reiterates that contention. The plaintiff characterizes the assessment of the court as a debt. To this the defendants respond that it is not a debt in any way but rather that the will contest was dismissed because the plaintiff failed to restore to the estate the benefits under the will which he had accepted. We are unable to accept the distinction made by the defendants. The ultimate effect of the ruling was that after occupying the premises for almost a year after his father died, the plaintiff was then required to pay a sum of money that, according to the offer of proof, he was unable to pay in order to maintain his lawsuit. The other condition necessary to maintain the lawsuit was to vacate the home by December 15, 1974. Although there is some dispute concerning the vacation of the house on December 15, 1974, because certain personal property remained on the premises, it is clear that the plaintiff tendered the house keys and no longer resided on the premises. The plaintiff complied with the only condition with which he was shown capable of complying.

The order of the circuit court of Cook County dismissing the complaint contesting the will is reversed and the matter is remanded to the trial court for actions not inconsistent with this opinion.

Reversed and remanded.

SIMON, P. J., and McNAMARA, J., concur.