# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Estate of Boyar*, 2012 IL App (1st) 111013

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF ROBERT E. BOYAR, Deceased (Robert A. Boyar, Petitioner-Appellant, v. Grant Dixon, as Trustee of the Sixth Amendment to the Robert E. Boyar Trust Agreement dated January 12, 1983, JOAN F. BOYAR, JEFFREY W. BOYAR, ELLEN L. BOYAR, LINDA J. GRAZIANI, KRISTINA BOYAR, LINDA J. GRAZIANI (as parent or legal guardian to Lucas Graziani), and JOAN F. BOYAR (as parent or legal guardian to Marianne Boyar-Larsen), Respondents-Appellees.) |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-1013 |
| Filed | January 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the trust established by petitioner's father during his lifetime, the trial court properly dismissed the surviving son's petition challenging an amendment naming respondent as the trustee on the ground that under the election doctrine, the son's acceptance of benefits under the trust prohibited him from contesting the validity of the trust, notwithstanding the son's argument that the doctrine applied only to wills, since it applies equally to wills and trusts, his taking of personal property belonging to the trust as a partial distribution of his interest in the trust ratified and confirmed the trust in its entirety and precluded him from challenging the operation of the document, regardless of his claims that the property taken was "nominal" and that he lacked full knowledge of the circumstances when he took the property. |

| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-P-3334; the Hon. James G. Riley, Judge, presiding. |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Barry A. Feinberg, Daniel J. Fumagalli, and David J. Feinberg, all of Chuhak & Tecson, P.C., of Chicago, for appellant. |
| | Kerry R. Peck and Timothy J. Ritchey, both of Peck Bloom LLC, of Chicago, for appellees. |
| Panel | JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion. |
| | Justices Pucinski and Sterba concurred in the judgment and opinion. |

**OPINION**

¶ 1    The petitioner-appellant, Robert A. Boyar (hereinafter Robert), appeals from an order of the circuit court dismissing his petition to contest the validity of an amendment to the trust of his deceased father, Robert E. Boyar. The circuit court predicated its decision to dismiss on the doctrine of election, which prohibits a party from both accepting a benefit conferred by a will while simultaneously maintaining an action to contest the validity of that document. The trial court found that since Robert had accepted a benefit conferred by the trust, *i.e.*, personal property belonging to the trust, he had ratified the entire trust agreement and was barred from maintaining his action to contest the last amendment to that trust. On appeal, Robert first contends that we should reverse the circuit court's order because the doctrine of election applies solely to wills and not trusts. Robert also contends that even if the doctrine of election is extended to trusts, it should not apply to this case because: (1) his receipt of personal property from the trust was nominal and therefore not an acceptance of a benefit conferred by the trust in any meaningful sense; (2) his receipt of personal property was ambiguous and not done with full knowledge of the circumstances surrounding the creation of the challenged trust amendment; and (3) his receipt of personal property was not inconsistent with his challenge to the trust amendment, since it pertained only to the amendment appointing Dixon as trustee and not to any substantive elements of the trust. In support of his last contention, Robert points out that under the trust itself, the invalidity of the sixth amendment would not render the entire trust invalid as the trust contains a severability clause. For the reasons that follow, we affirm the judgment of the circuit court.

-2-

I. BACKGROUND

¶ 3    The record reveals the following undisputed facts and procedural history. On January 12, 1983, Robert E. Boyar (the decedent) established the Robert E. Boyar Trust (hereinafter the trust). Under the terms of the decedent's will dated September 11, 1997, "all of his property of whatever nature and kind" was to be distributed to the trust. The trust was restated by the decedent twice, in 1997 and in 2000. Beginning in 2002, over a period of eight years, the decedent amended the trust six times: the first amendment on February 19, 2002, the second on October 18, 2003, the third on May 20, 2005, the fourth on November 17, 2006, the fifth on February 24, 2007, and the sixth and final amendment on April 27, 2010.

¶ 4    In the first amendment to the trust, the decedent named the Northern Trust Company (hereinafter Northern Trust) and Robert as cotrustees of the nonmarital trust, which were part of his trust. Northern Trust and Robert remained the designated cosuccessor trustees in the second and third amendments, and no changes to successor trustees were made in the fourth and fifth amendments. Under the original trust document, a trustee could be removed by a majority of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income from the trust. The sixth amendment, however, revoked this language in the original trust, and instead appointed G. Grant Dixon (hereinafter Dixon), a licensed Illinois attorney, as the sole cotrustee and successor trustee. Under the sixth amendment, removal of a trustee was not possible by a majority of the beneficiaries. The sixth amendment, however, made no other changes to the trust document. Specifically, no changes were made to any distribution provision under the trust and no benefits were conferred upon Dixon, other than appointment as trustee.

¶ 5    The decedent died of a heart attack on May 19, 2010. He was survived by five children, all of whom are beneficiaries to the trust: (1) Robert; (2) Joan F. Boyar (hereinafter Joan); (3) Jeffrey W. Boyar (hereinafter Jeffrey); (4) Ellen L. Boyar (hereinafter Ellen); and (5) Linda J. Graziani (hereinafter Linda). According to the trust, the trust property was to be divided into as many shares as necessary to create an equal share for each of the decedent's five children who survived him, and one equal share for each predeceased child as well as one share for all of the decedent's grandchildren. The first five amendments to the trust specified and revised the distribution scheme of the trust property with respect to the five children.[1]

---

[1]For example, the second amendment instructed that four of the children (Robert, Joan, Ellen, and Linda) each receive 20% of their share of the accumulated net income and principal within one year from the date of creation of the trust share, and distribution of the balance, five years from the date of creation of the share. The second amendment, however, gave the trustee (then Robert and Northern Trust) discretion with respect to distributing the trust property to Jeffrey, instructing that the trustee "not make any distribution of income or principal to Jeffrey if his liabilities and debts exceed the sum of $25,000 exclusive of mortgages and automobile loans." The fourth amendment revised the discretionary distribution guidelines with respect to Jeffrey, noting that in making distributions to Jeffrey the trustee should take into account "any additional sources of income and principal available to Jeffrey," that "all distributions made to Jeffrey be kept by Jeffrey separate and apart and not commingled with any spouse or spouse's property," and that

¶ 6 A petition for probate of the decedent's will was filed on June 9, 2010. On that same date, the circuit court entered an order granting Robert independent administration of the decedent's estate, and naming Robert as an independent administrator.[2]

¶ 7 After being informed by Dixon's counsel, Jeanine M. Cunningham, that the decedent had executed the sixth amendment to the trust pursuant to which Dixon would now be acting as trustee, on September 27, 2010, Robert filed a three-count verified petition to contest that amendment to the trust (hereinafter the petition).[3] The petition alleged that: (1) the decedent lacked the requisite mental capacity to execute the sixth amendment; (2) attorney Dixon had breached his fiduciary duty by placing himself as trustee and not allowing the income beneficiaries of the trust to remove him by majority vote; and (3) Dixon had exerted undue influence on the decedent in the procurement of the sixth amendment. The petition named Dixon as respondent and each of the beneficiaries as necessary parties.

¶ 8 According to the petition, the trust estate exceeds approximately $2.5 million. The petition alleged that Dixon was the decedent's neighbor for about five years and that he "orchestrated" the sixth amendment to the trust, knowing that the 84-year-old decedent suffered from dementia and would be incapable of appreciating or understanding the repercussions of that amendment.

¶ 9 The petition specifically alleged that in the last five years of his life, the decedent's physical health deteriorated so that he had become dependent on others. According to the petition, in the last three years of the decedent's life, his son, Jeffrey, moved into the decedent's home to help the decedent with his daily activities, including grocery shopping, doctor's visits, paying bills, managing finances, investing assets, and the like.

¶ 10 The petition further alleged that beginning in 2005, the decedent began to suffer from dementia, which progressively worsened up until his death. According to the petition, after suffering a fall and being taken to Hinsdale Hospital in January 2010, the decedent was moved to the Plymouth Place Nursing Home in LaGrange. He was subsequently treated by two geriatric specialists, both of whom opined as to his inability to make decisions regarding his finances. In support of this allegation, Robert attached copies of letters by the two treating

"genuine need must be shown by Jeffrey before [the] trustee shall make a discretionary distribution." The fourth amendment also instructed that Jeffrey receive 5% of his share of the accumulated net income and principal within 1 year from the date of the creation of his trust share, and distribution of the balance 20 years from the date of the creation of his trust share. The fifth amendment revised the distribution of the trust share for Ellen, giving her 5% of her share of the accumulated net income and principal within 1 year from the date of the creation of her trust share, and distribution of the balance 20 years from the date of the creation of her share.

[2]The circuit court subsequently and upon petition by Dixon and the decedent's younger son, Jeffrey, entered an order terminating Robert as independent administrator of the decedent's estate. The court, however, permitted Robert to continue to act as a supervised administrator of that estate.

[3]The petition was filed as a supplemental proceeding in the decedent's probate estate proceeding.

physicians prepared in the months prior to the decedent's death. The first letter was from Dr. Rahmawati Sih and was dated February 24, 2010, and the second was written by Dr. Mohammad T. Siddique and dated March 3, 2010. Both letters contained identical diagnoses, stating that the decedent suffered from "congestive heart failure, atrial fibrillation and Lewy Body Dementia, which [was] in the moderate stages." Both letters also opined that "due to his significant dementia," the decedent was "unable to make decisions regarding his personal and financial affairs, and thus, is considered disabled."

¶ 11    The petition further alleged that the sixth amendment to the trust was prepared by attorney Jeanine M. Cunningham, who was an attorney in the same building and on the same floor as attorney Dixon. The petition alleged that because the sixth amendment removed any other individual and corporate trustees and took away the right of the majority of the income beneficiaries to remove the trustee, Dixon had used the amendment to give himself sole control of the trust so as to collect trustee fees.

¶ 12    On November 2, 2010, Dixon filed a petition for issuance of a citation to discover and recover assets (hereinafter citation) against Robert pursuant to section 16-1 and 16-2 of the Illinois Probate Act of 1975 (Probate Act) (755 ILCS 5/16-1, 16-2 (West 2008)). The citation alleged, on information and belief, that on several occasions Robert impermissibly removed personal property located in the decedent's primary residence and belonging to the trust. The citation further alleged that Dixon as trustee informed Robert that these items belonged to the trust and requested that Robert provide him with an itemized list of any items removed.

¶ 13    In support of these allegations, the citation attached a copy of the general bill of sale and assignment of assets to the trust, which was executed by the decedent on October 18, 2003. This bill of sale specifically transferred "all of the [decedent's] furniture, furnishings, and household goods, including any similar interest [the decedent] may have in [his] jewelry, silver, books, pictures, works of art, paintings, collectibles, such as stamps, coins, antiques or memorabilia, and all other tangible personal property [other than vehicles]" located in the decedent's primary residence at 728 South Stone LaGrange, Illinois, and elsewhere, to the trust.

¶ 14    The citation also attached copies of two letters sent by Dixon as trustee to Robert. The first letter dated August 10, 2010, requested that Robert "itemize any and all items removed from the home, including a description, name of person removing said items, date of removal, current location, and approximate value," and provide the itemized list to Dixon as trustee within 14 days of the receipt of the letter. The second letter dated September 2, 2010, reiterated that Dixon was waiting on Robert to provide him with the inventory of the items he had removed from the decedent's home. The letter stated that "all the other children have provided me with their lists" and informed Robert that by "failing to provide this documentation, [Robert was] interfering with the prompt administration of this trust." The letter finally warned that if Robert did not provide Dixon with the inventory prior to September 9, 2010, Dixon, as trustee, would assume that Robert was refusing to produce the list and would be forced to "take appropriate action."

¶ 15    Subsequent to Dixon's citation, on November 10, 2010, Robert filed an emergency motion for leave to remove personal property from the decedent's home prior to the sale and

closing of the home. In that motion, Robert admitted that the decedent had executed a general bill of sale and assignment of assets on October 18, 2003, which assigned all his tangible personal property to the trust. The motion, however, alleged that as permitted by the trust, the decedent's children allocated the tangible personal property among themselves on or about May 25, 2010 and July 16, 2010. The motion alleged that "all of the decedent's children were present and they all came to an agreement on the distribution of the personal property." The motion further alleged that a portion of the personal property was left behind in the decedent's home, and that all of the children, except for Jeffrey, have confirmed that they do not want the remaining property. According to the motion, the remaining property was appraised by an auction home for a total price of $1,560. The motion sought permission to remove the remaining personal property from the home to prepare the home for sale prior to November 17, 2010. In support of his motion, Robert attached a copy of the appraisal list of the remaining 56 items at the decedent's home, prepared by Bunte Auction Services, Inc., and dated November 5, 2010.

¶ 16    The circuit court granted Robert's emergency motion, ordering that all of the decedent's children be notified that the personal property would be removed and disposed of from the residence on November 17, 2010, and providing them with reasonable access to the home before the sale so that, if they chose, they could take additional personal property and notify Robert's and Dixon's counsel, if they did so.

¶ 17    On November 24, 2010, Robert filed his response to Dixon's citation to discover and recover assets. In that response, Robert alleged that the citation should be denied because in allocating the personal property among themselves the decedent's children had acted in accordance to the exact terms of the trust,[4] and the remaining property was sold after an order by the circuit court permitted the removal of the property from the home. The response also finally attached a receipt for the personal property Robert had taken from the home, which Dixon had repeatedly requested. That receipt was signed by Robert on November 22, 2010,

---

[4]Robert did not attach a copy of the trust to his motion. The record, however, reveals that article seven of the trust states in relevant part:

"On my death, my trustee shall distribute my nonbusiness tangible personal property to my spouse.

* * *

If my spouse does not survive me, my nonbusiness tangible personal property shall be distributed to my surviving children in substantially equal shares.

**a. Allocation Among My Children**

My children shall allocate the property among them as they shall agree. ***

**b. Failure of My Children to Agree**

To the extent that my children fail to agree as to the division of any item of nonbusiness tangible personal property within a reasonable period of time, my Trustee shall, in its sole and absolute discretion, either divide the property equally among my children or sell the property and divide the proceeds equally among my children.

Any decision made by my Trustee with respect to either the selection or sale of my nonbusiness tangible personal property shall be final and shall be binding on all of my beneficiaries."

-6-

and acknowledged Robert's receipt of 14 items of personal property "as a partial distribution of [his] interest from the [trust], as amended." The items included: a stereo system, a card table set, art figurines from the living room, a coin collection, end tables from the living room and den, a television, DVD player and a few videos, an army uniform, a part of a China set, securing of the decedent's firearms, a Samurai sword, an Indian knife, a Persian knife, a fork set and miscellaneous family photographs.

¶ 18    On December 27, 2010, Dixon filed his reply to Robert's response to the citation, contending that in his response to the citation for discovery Robert had inappropriately raised issues of fact, namely whether the decedent's property was distributed by mutual agreement and without objection from all of the beneficiaries. According to the reply, such issues are only properly resolved through discovery. The reply pointed out that Robert's unverified response alleging such mutual agreement by the parties and his unsworn receipt of personal property taken from the decedent's home are not the proper basis for denying the citation.

¶ 19    While the petition for citation to discover and recover assets was pending before the circuit court, on December 27, 2010, Dixon filed a combined motion under section 2-619.1 of the Illinois Code of Civil Procedure (Code) to dismiss the petition to contest the sixth amendment to the trust. See 735 ILCS 5/2-619.1 (West 2008). The motion sought dismissal of the petition in its entirety pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2008)) arguing that the petition was barred by the doctrine of election, which prohibits a party from both accepting a benefit conferred by a will while simultaneously maintaining an action to contest the validity of that document. In support of this claim, the motion relied on Robert's November 22, 2010, receipt of personal property. The motion to dismiss also sought dismissal of count II (breach of fiduciary duty) and count III (undue influence) pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)), alleging that the petition failed to set forth any benefit conferred upon Dixon, as trustee, sufficient to sustain a cause of action for breach of fiduciary duty and undue influence. On November 27, 2010, Dixon also filed a counterclaim to the petition, alleging that the petition warranted the forfeiture of Robert's interest under the trust pursuant to the "contest clause" of the second restated trust.[5]

¶ 20    On December 10, 2010, Jeffrey, who was named as a necessary party to the litigation, filed a motion for involuntary dismissal pursuant to section 2-615 (735 ILCS 5/2-615 (West 2008)) on the basis that the petition did not seek any relief against Jeffrey.

¶ 21    On January 4, 2011, by order, the circuit court set a schedule for circulation by the trustee to the beneficiaries, a list of personal property belonging to the trust that had been removed from the decedent's home and received by the beneficiaries, time for the beneficiaries to send

---

[5]The contest clause is found in article 18, section 7, of the second restated trust and specifically provides:

"If any person, including a beneficiary, other than me, shall in any manner, directly or indirectly, attempt to contest or oppose the validity of this agreement, including any amendments thereto, or commences or prosecutes any legal proceedings to set this agreement aside, then in such event such person shall forfeit his or her share, cease to have any right or interest in the trust property, and shall be deemed to have predeceased me."

any written objections regarding said property and withdrawal of the citation for discovery without prejudice if the trustee did not receive any written objections by January 20, 2011. The circuit court also continued the counterclaim.

¶ 22 On January 28, 2011, Robert responded to the motion to dismiss, arguing that the doctrine of election does not apply to trust contests and that his receipt of personal property was not inconsistent with the relief requested in the petition, namely the invalidity of the sixth amendment and the removal of Dixon as trustee.

¶ 23 On March 3, 2011, the circuit court heard oral arguments on Dixon's motion to dismiss. The arguments of counsel centered solely on the application of the doctrine of election and the dismissal of the petition pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2008)). The circuit court granted Dixon's motion and dismissed the petition to contest the amendment in its entirety with prejudice pursuant to the doctrine of election. In doing so, the circuit court explained:

> "The law of election deals with more than just wills, I mean, if you take advantage of some writing or contract you can't then turn it on a later date and disavow knowledge of it or the existence of it. I mean it's been applied to contracts, wills, commercial transactions. The fact that there's not a case cited that goes to trust, I don't know if that's dispositive. But, it's the law. The law says if you take advantage of something you can't at a later date turn around and disavow the existence of it."

The court further noted that since the doctrine of election applied it was appropriate to dismiss the petition in its entirety. The court noted, however, that petitioner could "always file a petition to remove the trustee."

¶ 24 On March 25, 2011, Robert filed a motion to reconsider the court's order. In support of the motion to reconsider, Robert attached a sworn affidavit averring that the property he received from the trust was "nominal personal property, including [an] army uniform and miscellaneous coins." In the affidavit, Robert further averred that during his lifetime the decedent had given nominal personal property to his children, who were also beneficiaries of the trust. The affidavit finally stated that since the petition relates solely to the removal of Dixon as trustee, he did not believe that the distribution of the personal property would have any impact on the litigation and that he would agree to place the personal property with a third party so that the case could be heard on the merits.

¶ 25 On March 25, 2011, the circuit court denied the motion to reconsider. Robert now appeals, contending that the dismissal of his petition pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)) was made in error because the doctrine of election is inapplicable to trusts, and more specifically, because that doctrine, even if applicable to trusts, should not be applied to the facts of this case.

¶ 26                                       II. ANALYSIS

¶ 27 We begin by noting that a section 2-619 motion to dismiss admits the legal sufficiency of the complaint (*i.e.*, all facts well pleaded), but asserts certain defects, defenses or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002); see

735 ILCS 5/2-619(a)(9) (West 2008) (allowing dismissal when "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim"). In ruling on a section 2-619 motion, all pleadings and supporting documents must be construed in the light most favorable to the nonmoving party. *Mayfield v. ACME Barrel Co.*, 258 Ill. App. 3d 32, 34 (1994). The motion should be granted only where no material facts are in dispute and the defendant is entitled to dismissal as a matter of law. *Mayfield*, 258 Ill. App. 3d at 34. The relevant inquiry on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). Our review of the circuit court's grant of a motion to dismiss pursuant to section 2-619 is *de novo*. *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 668 (1996).

¶ 28 In the present case, the circuit court determined that Robert's petition to contest the sixth amendment to the trust was affirmatively barred by the doctrine of election. Under this well-settled doctrine, which the parties to this appeal recognize, any person who voluntarily accepts a beneficial interest under a will is held thereby to ratify and confirm the entirety of the will that conferred the benefit. *Kyker v. Kyker*, 117 Ill. App. 3d 547, 551 (1983). In other words, the beneficiary may not simultaneously accept a bequest and at the same time set up any right or claim that would defeat or prevent the full operation of the will. *Kyker*, 117 Ill. App. 3d at 551 (citing *Remillard v. Remillard*, 6 Ill. 2d 567, 571 (1955), *Schlimme v. Schlimme*, 364 Ill. 303, 305 (1936), and *Friederich v. Wombacher,* 204 Ill. 72, 76 (1903)); see also *In re Estate of Joffe*, 143 Ill. App. 3d 438, 440 (1986) (under the doctrine of election, "one cannot simultaneously accept benefits conferred by a will while setting up claims contrary to the terms of the document itself"). Rather, one must accept or reject the instrument in its entirety and "cannot pick and choose those clauses one finds most advantageous." *In re Estate of Joffe*, 143 Ill. App. 3d at 440. The result is that once a beneficiary has accepted a benefit under the will, he will be estopped from asserting any claim inconsistent with or contrary to the validity of that will. *Kyker*, 117 Ill. App. 3d at 551; see also *In re Estate of Joffe*, 143 Ill. App. 3d at 440-41.

¶ 29 On appeal, Robert acknowledges the doctrine of election, but argues that it could not have been used to bar his petition because it applies only to wills and not to trusts. Dixon, on the other hand, contends that the circuit court properly extended the application of the doctrine to the trust in this case. The parties concede, and our research has revealed, that no Illinois case has specifically addressed whether the doctrine of election applies to trusts. Accordingly, we are faced with a case of first impression in Illinois. For the reasons that follow, we find that the doctrine is applicable to the trust at bar.

¶ 30 Although no Illinois case has yet directly extended the doctrine of election to trusts, it is well established in Illinois that when "construing trusts *** the court will apply the same rules of construction that are applicable in construing wills." *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991); see also *First National Bank of Chicago v. Canton Council of Campfire Girls, Inc.*, 85 Ill. 2d 507, 513 (1981) (same); see also *Handelsman v. Handelsman*, 366 Ill. App. 3d 1122, 1130 (2006) (holding that "in general, will substitutes are to be construed according to the rules used to construe wills"); see also Restatement

(Third) of Property § 7.2 (2003) ("[a]lthough a will substitute need not be executed in compliance with the statutory formalities required for a will, [it] is, to the extent appropriate, subject to *** [the] rules of construction and *other rules applicable to testamentary dispositions*" (emphasis added)).

¶ 31       The rationale for construing trusts according to the rules for will construction has been twofold. First, our courts have taken into account the proliferation of trusts as an alternative, if not the preferred, means of passing property at death. See, *e.g.*, *Handelsman*, 366 Ill. App. 3d at 1129-30. Second, our courts have noted the similarities in interest obtained by a beneficiary of a trust and a will, and observed that it is logical to apply the rules for construing wills to testamentary trusts that differ from wills in form but not in purpose or substance. See, *e.g.*, *Handelsman*, 366 Ill. App. 3d at 1130 (" '[T]he owner who retains both the equitable life interest and the power to alter and revoke the beneficiary designated has used the trust form to achieve the effect of testation. Only nomenclature distinguishes the remainder interest created by *** a trust from the mere expectancy arising under a will.' " (quoting John H. Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harv. L. Rev. 1108, 1113 (1984))); see also Robert S. Held, *Refuse the Bequest or Lose the Will Contest: The Unforgiving Doctrine of Election*, 98 Ill. B.J. 374, 375 (2010) (noting that, "[g]iven the prevalence of living trusts as nonprobate 'will substitutes' *** any distinction between wills and will-substitute trusts is arbitrary"). As one of our appellate courts aptly explained:

" '[T]he availability of nontestamentary methods of making disposition[s] should not mean that substantive policies applicable to testamentary dispositions have no application. Thus, increasingly, statutes and case law in the various states are coming to recognize *** that the rights of the spouses and creditors of testators and of settlers of revocable trusts are fundamentally alike, because both the testator and the settlor have retained their complete control over the property that is subject to the will or trust instrument. Similarly, whatever the technicalities of concept and terminology, the interests the revocable-trust beneficiaries will receive on the death of the settlor should, generally at least, receive the same treatment and should be subject to the same rules of construction as the "expectancies" of devisees.' " *Handelsman*, 366 Ill. App. 3d at 1129-30 (quoting Restatement (Third) of Trusts § 25, cmt. a, at 379 (2003).[6]

---

[6]We note that several of our state's legislative enactments already equate wills and testamentary trusts. For example, the Illinois Trusts and Trustee Act recognizes no distinction between wills and will substitutes but, rather, states that the Act applies to every trust, whether created under a decedent's will or an *inter vivos* declaration of trust. See 760 ILCS 5/3(2) (West 2006) ("This Act applies to every trust created by will, deed, agreement, declaration or other instrument ***."). The Illinois Principal and Income Act similarly explicitly equates wills to will substitutes (such as trusts), providing that it "governs the administration of a decedent's estate whether settled by an executor or administrator or by a trustee under a trust instrument," and that "the references to representatives and to legacies shall be read as applying to trustees and to distributions under a trust instrument." 760 ILCS 15/6(f) (West 2006); see also Restatement (Third) of Property § 7.2, cmt. a (2003) ("[a]s will substitutes have proliferated and become alternative

¶ 32    Moreover, those jurisdictions that have addressed the application of the doctrine of election to trusts have rejected the notion that the doctrine is exclusively confined to wills and cannot be used in the context of other instruments, including trusts. See *Holzbaugh v. Detroit Bank & Trust Co.*, 124 N.W.2d 267, 269 (Mich. 1963) (applying the doctrine of election to a testamentary trust); *In re Beglinger Trust*, 561 N.W.2d 130, 131 (Mich. Ct. App. 1997) (same); *Thompson v. Soles*, 263 S.E.2d 599 (N.C. 1980) (applying the doctrine of election to a deed; noting that "[t]he doctrine of election frequently, though not exclusively, arises in case of wills; but the principle in its very nature seems to apply equally to other instruments and transactions"); see also John Norton Pomeroy, *A Treatise on Equity Jurisprudence* §§ 463, 470 (2d ed. 1892) (noting that "[t]he cases of election so frequently arise from wills that the general rules concerning it have sometimes been laid down *** in language which appears to confine it to those instruments," but that, in fact, "the doctrine of election *** applies to all instruments of donation–to deeds, settlements and the like, as well as to wills").

¶ 33    In *Holzbaugh*, the Michigan Supreme Court was unequivocal in its determination that the doctrine of election applies to trusts. *Holzbaugh*, 124 N.W.2d at 269. In that case, after specific bequests to certain family members, the deceased's will bequeathed the residue of his estate to a trustee and directed the trustee to pay specified amounts to the family members and the remainder to three chosen charities. *Holzbaugh*, 124 N.W.2d at 267. After receiving approximately $400,000 from the testamentary trust, the family members filed a petition to invalidate the trust and have the corpus designated for charity be distributed to them under the laws of descent and distribution as intestate property. *Holzbaugh*, 124 N.W.2d at 268. The petition was dismissed by the trial court on the basis of the application of the doctrine of election. *Holzbaugh*, 124 N.W.2d at 268. The Michigan Supreme Court affirmed that dismissal, noting:

> "Among the rules which have become axiomatic is one that a party must be consistent and not contradictory in the positions which he takes. In the language of Lord Kenyon, he must not 'blow hot and cold' at the same time, and one of the most important applications of the rule is where a party endeavors to establish a right or title in himself under one provision or implication of a deed or *other instrument* by ignoring or contradicting another provision or implication which is destructive or fatally repugnant. Now according to the reason of the rule which applies as well to deeds as to wills a person cannot claim under the instrument without confirming it. He must found his claim on the whole and cannot adopt that feature or operation which makes in his favor and at the same time repudiate or contradict another feature or operation which is counter or adverse to it." (Emphasis omitted.) (Internal quotation marks omitted.) *Holzbaugh*, 124 N.W.2d at 269 (quoting *Jacobs v. Miller*, 15 N.W. 42, 45 (Mich. 1883) (testamentary trust beneficiaries estopped from challenging validity of trust because they accepted benefits from that trust)).

means of passing property at death," "[t]his Restatement (along with the Restatement Third, Trusts, the Revised Uniform probate Code, and the Uniform Trust Code) moves toward the policy of unifying the law of wills and will substitutes").

-11-

¶ 34    More recently, in *In re Beglinger Trust*, 561 N.W.2d 130, 132 (Mich. Ct. App. 1997), the Michigan Appellate Court applied the rationale of its supreme court in *Holzbaugh* to a set of facts similar to the case at bar. In that case, the beneficiaries to a decedent's trust filed a petition to set aside the trust, claiming that the decedent lacked capacity to form the trust, that the trust did not reflect the decedent's intent, that the trust was the result of the undue influence of the trustee, and that the trust was the result of the misrepresentations of the trustee. *In re Beglinger Trust*, 561 N.W.2d at 132. The probate court granted the trustee's motion for summary judgment finding that the beneficiaries had received payments due them under the trust and, therefore, had acquiesced to the validity of the document. *In re Beglinger Trust*, 561 N.W.2d at 131. The court stated that it would be inequitable for the trust beneficiaries to be allowed to pursue their claim and that they were therefore estopped from challenging the trust. *In re Beglinger Trust*, 561 N.W.2d at 131. The appellate court affirmed, reiterating that the doctrine of election will act to bar beneficiaries to a trust from simultaneously taking from the trust and challenging the trust document. *In re Beglinger Trust*, 561 N.W.2d at 132. As the court in *In re Beglinger Trust* held:

> "Under the doctrine of election, a party who accepts a benefit under a will adopts the whole and renounces every right inconsistent with it. [Citations.] In Michigan, this principal was applied to a party who accepted benefits under a testamentary trust. [Citation.] Contestants' attempt to challenge the trust after having elected to accept its benefits in an attempt to 'blow hot and cold at the same time' and is barred." *In re Beglinger Trust*, 561 N.W.2d at 132.

*Cf. Burnet v. First National Bank of Chicago*, 12 Ill. App. 2d 514, 528-29 (1957) (holding that where husband created an *inter vivos* trust by the use of some of his wife's property as well as his own and provided for payment of income therefrom to wife during her life and for certain charitable and other dispositions thereafter, and wife, with full knowledge of her right to the power of appointment given to her by the trust agreement, renounced the same in her will and accepted the trust income, wife was estopped from claiming any interest in the trust assets, which were allegedly traceable to her separate estate property and her executrix stood in her shoes and was also estopped).

¶ 35    We agree with the rationale of the Michigan Supreme Court, as well as Illinois decisions, which have found it logical to apply the rules of will construction to testamentary trusts that differ from wills in form but not in purpose or substance. See *Handelsman*, 366 Ill. App. 3d at 1129-30 (quoting Restatement (Third) of Trusts § 25, cmt. a (2003)). Since the trust at issue in this case was used to achieve the effect of testation, we perceive no reason why the doctrine of election ought not to apply to the trust with the force it would apply if the document at issue were a will. See *Handelsman*, 366 Ill. App. 3d at 1130 ("Only nomenclature distinguishes the remainder interest created by *** a trust from the mere expectancy arising under a will." (Internal quotation marks omitted.)); see also *Estate of Williamson v. Williamson*, 275 Ill. App. 3d 999, 1008 (1995) (the "doctrine of election

should be applied when justice demands").[7]

¶ 36    Accordingly, applying the doctrine of election to the facts of this case, we hold that Robert is barred from challenging the sixth amendment to the trust. It is undisputed by the parties that Robert took 14 items of personal property from the decedent's home "as partial distribution of [his] interest from the [trust], as amended" and that those items belonged to the trust. Since Robert has voluntarily accepted a benefit from the trust, he is held to have ratified and confirmed the trust document in its entirety and cannot now set up claims challenging the operation of that document. See *Kyker*, 117 Ill. App. 3d at 551; see also *In re Estate of Joffe*, 143 Ill. App. 3d at 440 (under the doctrine of election, "one cannot simultaneously accept benefits conferred by a will while setting up claims contrary to the terms of the document itself"; rather, one must accept or reject the instrument in its entirety and "cannot pick and choose those clauses one finds most advantageous"); *In re Estate of King*, 245 Ill. App. 3d 1088, 1097-99 (1993) (holding that beneficiaries who received personal property under residuary estate were barred by the doctrine of election from contesting the will).

¶ 37    Robert nevertheless contends that it would be unfair to apply the doctrine of election under the circumstances of this case because the value of the property he took from the trust was "nominal" and, therefore, not an acceptance of a benefit conferred by the trust in any meaningful sense. We disagree.

¶ 38    This same argument was raised and rejected by our appellate court in *In re Estate of King*. In that case, just as here, the plaintiffs, beneficiaries under the decedent's will filed a petition contesting the will after having distributed the tangible personal property of the decedent among themselves. *In re Estate of King*, 245 Ill. App. 3d at 1091. The circuit court granted summary judgment in favor of the executrix and dismissed the petition to contest the will pursuant to the doctrine of election. *In re Estate of King*, 245 Ill. App. 3d at 1093. The appellate court affirmed rejecting the beneficiaries' argument that they should not be precluded from maintaining the will contest by their acceptance of the distribution of some "sentimental" items from the estate. *In re Estate of King*, 245 Ill. App. 3d at 1098. The court explained that the beneficiaries were attempting to argue that the *value* of a legacy or bequest should control the application of the doctrine of election. *In re Estate of King*, 245 Ill. App. 3d at 1098. The court rejected this argument reiterating that "under Illinois law *** it is the taking of inconsistent positions under the will rather than the value of the property taken under the will which [is] controlling." *In re Estate of King*, 245 Ill. App. 3d at 1098.

¶ 39    Robert further contends that the circuit court erred in dismissing his petition pursuant to

---

[7]Robert argues on appeal that the doctrine of election should generally not be extended to trusts because acceptance of property during the lifetime of a settlor, which is permitted under living trusts, could automatically foreclose a beneficiary's right to contest postdeath. However, Robert argues a set of facts that are not before this court. As shall be elaborated below, Robert took from the trust after the decedent died, with full knowledge that the property taken belonged to the trust. In addition, he concedes that he took the property as "partial distribution of his interest" in the trust, as amended. Moreover, we limit our application of the doctrine of election to trusts, to the particular circumstances of this case.

-13-

the doctrine of election because it failed to consider the well-established exceptions to that doctrine. Specifically, Robert argues that there is ambiguity as to whether he had full knowledge of the facts and circumstances, at the time the personal property was divided between him and his siblings. We disagree.

¶ 40    Our courts recognize only two exceptions to the doctrine of election. Under the first exception, to trigger the application of the doctrine, acceptance of a benefit under a provision of the testamentary document must have been made with full knowledge of the relevant facts and circumstance, including the contents of that document and the circumstances surrounding its execution. See *Kyker*, 117 Ill. App. 3d at 551 (citing *Elmore v. Carter*, 289 Ill. 560, 562 (1919), *Dougherty v. Gaffney*, 239 Ill. 640, 643 (1909), and *In re Estate of MacLeish*, 46 Ill. App. 3d 957, 961 (1977)). Under the second exception, even though a person accepts a benefit under the will, he is not precluded from questioning the validity of any provisions of the document that are contrary to the law or public policy. See *Kyker*, 117 Ill. App. 3d at 552 (citing *Chaney v. Baker*, 302 Ill. 481, 484 (1922), *Elmore v. Carter*, 289 Ill. 560, 562 (1919), and *In re Estate of Gerbing*, 22 Ill. App. 3d 454, 458 (1974), *aff'd in part & rev'd in part on other grounds*, 61 Ill. 2d 503 (1975)).

¶ 41    In the present case, Robert fails to come under the protective banner of either of these exceptions. First, as to the exception allowing for questioning the validity of any provisions on the grounds that they violate law or public policy, Robert has not challenged any portion of the trust on that basis so as to avail himself of that exception. See *Kyker*, 117 Ill. App. 3d at 552.

¶ 42    What is more, Robert similarly cannot avail himself of the exception allowing the challenge to a testamentary document to proceed if one's acceptance of those benefits was not made with full knowledge of the circumstances of the execution of the document. In that respect, the record reveals that in his petition to contest the sixth amendment to the trust, filed on September 27, 2010, Robert asserted that the decedent did not possess the requisite mental capacity to execute the trust amendment and that Dixon executed undue influence over the decedent, as well as breached his fiduciary duties in appointing himself trustee. The record further indicates that in support of these assertions, Robert provided the circuit court with letters of two of decedent's treating physicians attesting to the decedent's inability to make financial decisions. These letters were signed by the physicians in February 2010, more than six months prior to Robert filing his petition to contest the trust amendment. Under these circumstances, Robert cannot genuinely contend that he was not aware of the circumstances surrounding the execution of the trust amendment. See *Kyker*, 117 Ill. App. 3d at 552 (holding that where petitioner asserted in her will contest petition that the testator did not possess the requisite capacity to execute the will and that the executor exerted undue influence over the testator, "it [was] clear, given the two grounds of her petition, that she was fully aware of the circumstances surrounding the execution of the will that she alleged in her original pleading in this cause"); see also *In re Estate of Joffe*, 143 Ill. App. 3d at 442 (holding that because the petitioners alleged lack of testamentary capacity on the part of the testator and undue influence on the part of the executor at the time the will contest petition was filed, they knew at that point in time all the material facts; "we find it appropriate to focus on [the] petitioners' conduct at the time the will contest petition was filed. At that time,

if not earlier, petitioners must have been aware of all the facts material to the execution of the will; this much, at least, is manifest from *the very fact that the will contest was filed*." (Emphasis added.)); see also *In re Estate of King*, 245 Ill. App. 3d at 1100 ("resolution of whether acceptance of the bequest was made with full knowledge focuses on whether or not the beneficiary knows or is prevented from learning the circumstances concerning execution of the will, not the effect of his or her acceptance of the bequest on the legal ability to maintain the will contest action. *** [P]laintiffs are deemed to know all relevant facts concerning *execution of the will* at the time the will contest petition was filed. *** [P]laintiffs must also be deemed to have made an election at the time they filed their will contest petition." (Emphasis added and omitted.)).

¶ 43    Moreover, the record directly rebuts Robert's assertion that he was not fully aware of the facts and circumstances of the trust provisions at the time he took personal property from the trust, so as to make an informed election. The record reveals that prior to filing his petition contesting the sixth amendment, Robert received trust property on at least two occasions after decedent's death (on May 25, 2010, and July 16, 2010). Despite receiving letters from Dixon's counsel informing him of the appointment of Dixon as trustee, and requesting that Robert return the property taken from the decedent's home to the trust, Robert repeatedly refused to cooperate with Dixon. Robert specifically refused Dixon's requests to return the removed property or, in the very least, to provide Dixon with an itemized list of that property. Instead, while keeping the taken property, Robert filed his petition contesting the sixth amendment to the trust, which appointed Dixon as trustee. Although Robert eventually agreed to provide Dixon with a receipt of the 14 items removed from the decedent's home on November 22, 2010, in that receipt, he explicitly acknowledged that the items were taken as "a partial distribution of [Robert's] interest from the [trust], as amended." Robert also conceded that the general bill of sale transferring all of the decedent's personal property to the trust was executed on October 18, 2003, years before the decedent's death, and while Robert himself was trustee. Under these circumstances, Robert cannot genuinely contend that he lacked full knowledge of the facts and circumstances of his election to take under the trust. See, *e.g.*, *Kyker*, 117 Ill. App. 3d at 551; see also *In re Estate of Joffe*, 143 Ill. App. 3d at 442; see also *In re Estate of King*, 245 Ill. App. 3d at 1100. Nor can he argue ignorance of the law regarding the equitable doctrine of election. See *Oglesby v. Springfield Marine Bank*, 395 Ill. 37, 64 (1946) (ignorance of the law regarding the doctrine of election will not relieve an electing beneficiary of its consequences).

¶ 44    In coming to this conclusion, we have considered the case of *In re Estate of MacLeish*, 46 Ill. App. 3d 957 (1977), cited by Robert and find it inapposite. In *MacLeish* the testator's son was given the use of a house rent free for his lifetime under the will. *Estate of MacLeish*, 46 Ill. App. 3d at 958. The beneficiary had resided in the house for 28 years prior to the testator's death and had regularly paid $200-per-month for rent under the terms of the written lease in effect prior to the testator's death. *Estate of MacLeish*, 46 Ill. App. 3d at 959. The beneficiary filed a will contest petition approximately six months after the estate was opened but paid no rent for the property after his father's death. *Estate of MacLeish*, 46 Ill. App. 3d at 959. The final lease also contained a provision that would make a holdover tenant a tenant by sufferance at a specified rental per day. *Estate of MacLeish*, 46 Ill. App. 3d at 959. The

-15-

per-day rental was left blank on the lease, however, and no requests were made by the executor for payment of holdover rent. *Estate of MacLeish*, 46 Ill. App. 3d at 959. The trial court found that the fair rental value of the property was $875 per month and held that the beneficiary had to either pay the 12 months of back rent at $875 per month or he would be deemed to have made an election under the will. *Estate of MacLeish*, 46 Ill. App. 3d at 959-60. When the beneficiary failed to pay the executor the $10,500 in back rent, the trial court dismissed the will contest petition pursuant to the doctrine of election. *Estate of MacLeish*, 46 Ill. App. 3d at 960.

¶ 45    The reviewing court reversed, holding that dismissal of the petition was improper because the beneficiary's "consent" to probate of the will under the ambiguous circumstances presented did not indicate a knowing acceptance of the benefits under the will. *Estate of MacLeish*, 46 Ill. App. 3d at 961-62. The court noted that the first time the beneficiary was afforded an election was when the trial court ordered him to pay the back rent or vacate the premises, or be deemed to have made an election under the will, and this was not a real election because the son was impecunious and unable to pay the large amount of money. *Estate of MacLeish*, 46 Ill. App. 3d at 961-62. The court also noted that there was a dispute with the executor as to whether the beneficiary had vacated the premises; the beneficiary had turned over his keys to the executor but had left certain personal property on the premises. *Estate of MacLeish*, 46 Ill. App. 3d at 962.

¶ 46    We observe no similar ambiguity with Robert's acceptance of the distribution of property in the instant case. Robert conceded in his own signed receipt of the property taken that he had taken the property as "partial distribution of [his] interest in the trust, as amended." In addition, Robert acknowledged, and neither party contests that all of the beneficiaries agreed with the distribution of the tangible personal property from the trust among themselves as permitted under the trust document. Accordingly, Robert cannot contend that he did not make a knowing election to take under the trust or that Dixon, as trustee, should have advised him that if he accepted the distribution under the trust he would be deemed to have made an election and would be foreclosed from contesting the same. We thus find the *MacLeish* case to be distinguishable on its facts.

¶ 47    Robert nevertheless attempts to argue that because, as part of his motion to reconsider the circuit court's dismissal of his petition, he attached an affidavit offering to place the removed property with a third party while the litigation proceeded, we should reverse the circuit court's order and accept his offer of tender while he proceeds with the merits of his petition.

¶ 48    Our courts have recognized that some jurisdictions have adopted a third exception to the doctrine of election, under which a beneficiary will be permitted to challenge the validity of the will if he timely tenders or repays the benefits received under the will and the estate is not prejudiced by his temporary acceptance of those benefits. See *In re Estate of Joffe*, 143 Ill. App. 3d at 442; see also *Kyker*, 117 Ill. App. 3d at 552 (citing *In re Estate of MacVicar*, 104 N.W.2d 594, 598 (1960), V. Woerner, *Estoppel to Contest Will or Attack Its Validity*, 28 A.L.R.2d 116, 154, 157-66 (1953), and 80 Am. Jur. 2d *Wills* § 899, at 83 (1975)); see also *In re Estate of King*, 245 Ill. App. 3d at 1099. Our courts have held that "the better view is that, in order to permit a contest of the will, the return of or an offer to repay a legacy should

-16-

be made prior to instituting the contest proceeding." *Kyker*, 117 Ill. App. 3d at 552; see also *In re Estate of King*, 245 Ill. App. 3d at 1099; *In re Estate of Joffe*, 143 Ill. App. 3d at 442. As the appellate court in *In re Estate of King* explained:

> "While a beneficiary should be granted a reasonable time after receipt of a bequest in which to make an election to accept or reject it, *** where the beneficiary has made an election to accept the benefits of the will with full knowledge of the relevant facts and circumstances without that election being induced by fraud or mistake, the beneficiary is bound by that election and cannot change h[is] mind and be permitted to contest the will by tendering back those benefits." *In re Estate of King*, 245 Ill. App. 3d at 1099 (citing *Kyker*, 117 Ill. App. 3d at 552-53).

Accordingly, our courts have repeatedly held that where the beneficiaries challenging the will did not return or, in the very least, offer to return the property at the time the will contest was filed or within a reasonable time thereafter, they could not avail themselves of the third exception to the doctrine of election. See *In re Estate of King*, 245 Ill. App. 3d at 1100; see also *Kyker*, 117 Ill. App. 3d at 553; *In re Estate of Joffe*, 143 Ill. App. 3d at 442.

¶ 49    Applying the principles articulated above to the facts at hand, we find that Robert cannot avail himself of this exception. As already noted above, Robert received the personal property from the decedent's trust on at least two occasions prior to instituting his petition challenging the trust amendment. Although Robert was repeatedly asked to return the property or provide the trustee with an itemized list of the items taken, he chose to retain the property, even refusing to provide the itemized list, until two months into the litigation. What is more, Robert did not offer to return the property while the motion to dismiss was pending before the circuit court. The first time Robert made such an offer was after the circuit court ruled against him and found that the doctrine of election applied to bar his petition. Robert made that offer as part of his motion to reconsider on March 25, 2011, over six months after initiating his petition and more than nine months after accepting the benefits of the challenged trust. "This hardly qualifies as a timely tender back of the benefits." *In re Estate of Joffe*, 143 Ill. App. 3d at 443.

¶ 50    Rather than return the property prior to initiating his challenge to the trust amendment, Robert chose to retain the property while simultaneously attacking the trust, which granted him the property in the first place. *In re Estate of Joffe*, 143 Ill. App. 3d at 443. By accepting and then retaining the property, in spite of repeated requests for its return, Robert made a binding election, thereby ratifying the trust document, and he cannot now evade that election by tendering the property, after the fact. See, *e.g.*, *In re Estate of King*, 245 Ill. App. 3d at 1100 (holding that the plaintiffs were "woefully tardy" and could not avail themselves of this exception to the doctrine of election where they offered to return the "sentimental items" they had distributed among themselves if, during the proceedings before the circuit court, the court found the doctrine of election was applicable"); see also *Kyker*, 117 Ill. App. 3d at 553 (holding that the will contestant did not fall under this exception because she accepted the bequest after she had filed the will contest, and did not tender the bequest until three months had passed); *In re Estate of Joffe*, 143 Ill. App. 3d 438 (holding that the petitioners did not fall within the exception because they held the legacies for over four months when they filed the will contest petition, and then waited for another month before moving to return the

legacies).

¶ 51 Robert finally argues that we should reverse the circuit court's dismissal because his contest to the sixth amendment to the trust should not be construed as a challenge to the entire trust but rather a challenge to a provision of that trust that exclusively deals with the appointment of a new trustee. In support of this contention, Robert points out that the trust contains a severability clause, permitting the remainder of the trust to stand if one of its provisions is found to be invalid.

¶ 52 We initially note that Robert has waived this issue for purposes of appeal by failing to argue it in the circuit court below. An issue not argued before the circuit court but rather raised for the first time on appeal is generally waived. See *Eagan v. Chicago Transit Authority*, 158 Ill. 2d 527, 534 (1994) ("issues not raised in the trial court may not be raised for the first time on appeal").

¶ 53 What is more, the severability clause that Robert refers to explicitly applies only if provisions of the trust that are found to be invalid by a court of competent jurisdiction. Article 18, section 19(h), of the second restatement of the trust, specifically reads:

"If any provision of this agreement is declared by a court of competent jurisdiction to be invalid for any reason, such invalidity shall not affect the remaining provisions of this agreement. The remaining provisions shall be fully severable, and this agreement shall be construed and enforced as if the invalid provision had never been included in this agreement."

¶ 54 Contrary to what Robert would have us believe, the circuit court below never reached a conclusion as to the validity of the sixth amendment to the trust; nor could it under the doctrine of election, which serves as an affirmative bar to the substantive challenges to testamentary documents where the contestant simultaneously takes a benefit under the document. See *Kyker*, 117 Ill. App. 3d at 551 (under the doctrine of election, one cannot simultaneously accept benefits conferred by a will while setting up claims contrary to the terms of the document itself); see also *In re Estate of Joffe*, 143 Ill. App. 3d at 440-41 (under the doctrine of election "one accepts or rejects the instrument in its entirety, and cannot pick and choose those clauses one finds most advantageous. [Citations.] The result of this rule is that once a beneficiary under a will has accepted a benefit granted by the will, he will be estopped from asserting any claim contrary to the validity of the will."); see also *Fischer v. LaFave*, 188 Ill. App. 3d 16, 19 (1989) ("The same rules of construction apply to both the will and the trust indenture. [Citation.] *** With respect to the testamentary trust, a will and all codicils must be read together as one instrument of the date of execution of the last codicil."); *Jackman v. Kasper*, 393 Ill. 496, 511 (1946) ("A will and all codicils thereto are to be construed together as parts of one and the same instrument [citation], the will and all codicils being read together as one instrument of the date of the execution of the last codicil."). Since we find that the doctrine of election applies, we are similarly unable to consider whether the sixth amendment is invalid, so as to be severable under the trust.

¶ 55                                   III. CONCLUSION

¶ 56 For all of the aforementioned reasons, we find that the circuit court properly dismissed

Robert's petition. In doing, so we are mindful that the circuit court informed Robert that he had another avenue for challenging the appointment of Dixon as the trustee, by filing a petition to remove the trustee in a separate proceeding before the circuit court. We see no reason why Robert, if he chose, could not proceed in that manner.

¶ 57　　　　Affirmed.