**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190313-U

Order filed January 28, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0313 Circuit No. 15-CF-117 |
| JASON E. COHEE, | ) ) ) | The Honorable Paul L. Mangieri, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Holdridge and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The trial court's denial of defendant's motion for sanctions is affirmed where defendant failed to show an abuse of discretion.

¶ 2     After being found not guilty by reason of insanity (NGRI) of threatening a public official and stalking, defendant, Jason E. Cohee, was committed to the Illinois Department of Human Services (DHS). Defendant subsequently filed a motion to vacate the trial court's conditional discharge order and a motion for sanctions against the State under Illinois Supreme Court 137

(eff. Jan. 1, 2018). The trial court granted the motion to vacate but denied the motion for sanctions. Defendant appeals the trial court order denying his motion for sanctions. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4        In February 2015, defendant was arrested for threatening a public official. Defendant was subsequently charged by way of indictment with two counts of threatening a public official (720 ILCS 5/12-9(a)(1)(i) (West 2014)) (Class 3 felony offenses) and two counts of stalking (720 ILCS 5/12-7.3(a)(1) (West 2014)) (Class 4 felony offenses). In charging defendant with threatening a public official in counts I and II, the State alleged that on or about January 1 to February 18, 2015, defendant conveyed indirectly to a circuit court judge "a written communication containing a threat that would place her or her immediate family in reasonable apprehension of immediate or future bodily harm or sexual assault and the threat was conveyed because of the hostility of the defendant toward the status or position of the public official," including her prior status as an assistant state's attorney. In charging defendant with stalking in counts III and IV, the State alleged that defendant knowingly engaged in a course of conduct directed at the named public official knowing the conduct would cause a reasonable person to fear for their or another's safety (count III) and/or knowing said conduct would cause her to suffer emotional distress (count IV), in that defendant went to her residence on January 1, 2015, spoke directly to her, and left materials, and then returned on February 18, 2015, and communicated with her by leaving notes directed to her.

¶ 5        On May 15, 2015, defendant's attorney filed a motion for defendant to undergo a psychiatric evaluation regarding defendant's culpability and fitness to stand trial. The trial court granted the motion, finding a *bona fide* doubt had been raised as to defendant's fitness to stand trial, plead, or be sentenced.

2

¶ 6        On July 31, 2015, the parties stipulated to the admissibility of the psychiatric evaluation, in which the psychiatrist opined, within a reasonable degree of psychological and psychiatric certainty, that defendant was fit to stand trial. Defendant's attorney requested that an expert be appointed to evaluate defendant for sanity at the time of the events. The trial court found defendant was "mentally fit to stand trial" and appointed a psychiatrist to evaluate defendant for "sanity defenses."

¶ 7        On October 21, 2015, following a stipulated bench trial, the trial court found defendant not guilty by reason of insanity. The trial court ordered that defendant be committed to the DHS for an evaluation on an inpatient basis and that he remain in jail for purposes of such evaluation and until further order of the court.

¶ 8        On December 22, 2015, a hearing on defendant's placement took place. The trial court found that defendant was in need of mental health services on an inpatient basis. The State noted the maximum term to which defendant could be held was five years (the maximum sentence to which defendant could have been sentenced had he been convicted). Defendant and his counsel had no objection to the State's contention that inpatient mental health treatment was appropriate to defendant's condition. Defendant's counsel stated, "I would join in the State's recommendation both for the placement of [defendant] into the state mental health facility and the report." The trial court found defendant was: (1) in need of mental health services on an inpatient basis; (2) subject to involuntary admission or commitment; and (3) was a danger to himself or others. The trial court remanded defendant to the custody of the DHS for treatment. The trial court also found that the maximum sentence to which defendant would be required to serve was five years (based upon a Class 3 felony being the highest-class felony for which he was found not guilty by reason of insanity). The trial court indicated that its order committing

3

defendant to the DHS expired by operation of law on February 20, 2020—five years from defendant's original custody date of February 20, 2015.

¶ 9        On December 22, 2016, defendant filed a *pro se* petition for a transfer to a non-secure setting or to be discharged or conditionally released from the custody of the DHS, with defendant specifically requesting either a conditional release or unsupervised privileges (both on the facility's grounds and off grounds). Defendant also requested an impartial psychiatric or psychological evaluation. On February 10, 2017, a status hearing took place on defendant's *pro se* petition at which defendant was not present. The trial court reappointed counsel to represent defendant, who adopted defendant's *pro se* pleadings. The trial court also ordered a psychological examination for the determination of "the need [for] and the nature and extent of what mental health services may be needed by [defendant]." On May 10, 2017, after a hearing, the trial court found that although defendant had failed to prove he should be conditionally released or discharged, he had proven that he should be granted unsupervised on-ground and supervised off-ground privileges.

¶ 10        On February 28, 2018, the State filed a motion for an impartial examination in light of a request by the DHS for defendant to be conditionally released. On March 7, 2018, the trial court granted the State's motion and appointed Dr. Kip Hillman to perform an impartial examination of defendant in regard to the appropriateness of a conditional release. On April 27, 2018, the trial court noted that it had received Hillman's report of April 16, 2018, in which Hillman had opined that defendant was no longer in need of inpatient mental health services and could be released. The trial court requested that the DHS provide "a detailed and specific plan" of recommended conditions that should be placed on defendant if he were to be conditionally released.

¶ 11    On May 18, 2018, a hearing took place, and the State presented the trial court with a proposed conditional release order. The conditions included defendant living with his mother, attending all appointments, obeying all treatment directives, taking all prescribed medications; submitting to testing, not consuming alcohol or drugs (except those prescribed), not possessing firearms or living where firearms are kept, not coming within 5000 feet of the victim's home, and wearing an electronic monitor. The order also indicated defendant was not to enter the Peoria County courthouse unless attending a court hearing as a party or subpoenaed witness or for a legitimate purpose in a county office within the courthouse. Additionally, defendant was not to come within 300 feet of the victim (except when at the Peoria County Courthouse under conditions described in the order). The order further provided, "[p]ursuant to 730 ILCS 5/5-2-4 the Defendant is to be conditionally released to the outpatient care of the Peoria Human Service Center for a period of 5 years, beginning May 18, 2018[,] and ending May 18, 2023."

¶ 12    Defendant's counsel indicated that had witnessed defendant read and sign the order and that defendant understood that he would be bound by the conditions set forth in the order. Additionally, defendant's counsel indicated that defendant had asked questions prior to signing order and that defendant was currently inquiring about the five-year duration of the conditional release terms. Defendant's attorney stated to the trial court, "I showed him the citation of 730 ILCS 5/5-2-4(h)." The trial court noted that section 5-2-4(h) of the Code of Corrections provided, " '[s]uch conditional release shall be imposed for a period of five years as provided in paragraph d, subsection a(1).' "

¶ 13    The trial court ordered defendant to be conditionally released to outpatient care for a period of five years (from May 18, 2018, until May 18, 2023), subject to the conditions set forth in the conditional release order. The trial court then reviewed the conditions with defendant, who

confirmed his understanding of each condition. The trial court entered the conditional release order, which was signed by both the trial court and defendant. Neither of the parties' attorneys signed the order.

¶ 14 On January 29, 2019, defendant filed a *pro se* motion to vacate the conditional release order. In the motion and supplementary memorandum in support thereof, defendant contended the conditional release order was void *ab initio* because, with the application of day-for-day good time credit, the maximum length of time for commitment had already been exceeded so that he was beyond the trial court's jurisdiction when the order was entered. Defendant indicated that he had known the five-year duration of the conditional release was too long at the time of the hearing, but he believed that any objection he made to the conditional release terms on May 18, 2018, "would probably [have] prolong[ed] his [inpatient] stay" at the mental health center.

¶ 15 On January 29, 2019, defendant also filed a *pro se* motion for attorney sanctions against Brian FitzSimons (the attorney for the State at the time the conditional release order was proposed and entered) and against Jerry Brady (the Peoria County State's Attorney at that time) "for not taking reasonable time to study and analyze the law" before drafting the conditional release order in violation of Illinois Supreme Court Rule 137. Defendant contended that his conditional release order had not been "warranted by existing law." As exhibits in support of the motion, defendant attached copies of two emails that he had sent to the Peoria County State's Attorney's Office on June 16, 2018, in which he had attempted to communicate that the conditional release order had been entered in error.

¶ 16 On February 19, 2019, the trial court entered an order indicating that the State "shall file any response it desires to make" to defendant's motions by March 15, 2019. On April 12, 2019, a hearing took place on defendant's *pro se* motions at which defendant appeared *pro se*. The trial

6

court confirmed that the State had not filed any response to the motions. The attorney for the State indicated that pursuant to section 5-2-4(c) of the Code of Corrections (Code) (730 ILCS 5/5-2-4 (West 2018)), every defendant acquitted of a felony by reason of insanity and subsequently found in need mental health services shall be represented by counsel. The attorney for the State further indicated that it was the State's position that defendant was "required to have counsel to move forward on the motion—on any motion."

¶ 17   The trial court inquired as to the State's position regarding defendant's motion to vacate the conditional release order. The attorney for the State asked that the motion be denied. The trial court asked defendant if he wished to have legal counsel present. Defendant responded, "[y]es, I believe it would be foolish not to." The trial court indicated that pursuant to statute and defendant's desire for counsel to be present, it would appoint the public defender to represent defendant. The trial court further indicated it intended "to move as quickly as possible" because if defendant was correct, then he should be released from all conditions. Defendant requested for the trial court to decide the matter on the pleadings, but the trial court stated it would not make a final ruling without first reviewing the State's response to the motion. The trial court again noted, however, that it wished to proceed as quickly as possible because if defendant was, in fact, correct, then defendant should be released from any further conditions. The trial court continued the matter for a status hearing on May 10, 2019.

¶ 18   On April 24, 2019, defendant filed a *pro se* motion for leave to file a counterclaim for civil penalties against the State based upon a theory of intimidation by the State. In the motion, defendant argued that a mental disability was covered under the Illinois hate crime statute and that the State's position that defendant should be held to his conditional release order was made in bad faith and caused defendant severe emotional distress. Defendant requested damages in the

7

amount of $25,000 pursuant to "the Hate Crime statute for the intimidation of [defendant] ***

causing severe intentional infliction of emotional distress *** since May 18, 2018." Defendant

also filed a *pro se* motion for the trial court to appoint public defender, Jennifer Patton, or

someone in her stead, as his "standby counsel."

¶ 19        On May 10, 2019, defendant's appointed attorney, Jennifer Patton, filed a motion for

defendant to be discharged from conditional release. In the motion, defendant's attorney argued

that defendant could not be held in custody beyond the maximum sentence for the highest felony

charge against him; the end date stated in the conditional release order had not accounted for

applicable day-for-day good time credit; and the correct end date of the conditional release order

should have been August 20, 2018. At the hearing on the motion the same day, May 10, 2019,

defendant's counsel indicated that she was not adopting defendant's *pro se* motions and that she

had filed her own motion that morning for defendant to be discharged from conditional release.

Although the attorney for the State had just received the motion that morning, he indicated,

"[w]e would move forward on this motion this morning." No written response was filed by the

State.

¶ 20        In support of the motion, defendant's counsel argued: the Class 3 felony charge for which

defendant was found not guilty by reason of insanity had an applicable sentence of imprisonment

of two to five years; defendant's initial custody date was February 20, 2015; and with day-for-

day good time credit, defendant's release date should have been August 20, 2017—two-and-a-

half years from the date defendant went into custody based on a 5-year maximum sentence and

applicable good time credit. The attorney for the State conceded that defendant's release date

should be calculated five years from the time of defendant's arrest but argued that good time

credit was not applicable to the nine months defendant spent in pretrial custody. The trial court

found that since the offense of threatening a public official was the greater class of felony for which defendant was found NGRI—a Class 3 felony—the maximum sentence defendant could have received would have been five years and, with the calculation of good time credit, the sentenced was reduced by half. The trial court found that because the conditional release order had been entered after August 20, 2017, it should be vacated. The trial court, therefore, found it no longer had jurisdiction of defendant, granted the motion for discharge from conditional release, and vacated all other conditions previously imposed by the conditional release order.

¶ 21    As for defendant's *pro se* motion for sanctions, the State argued that the motion could not be addressed because defendant had been represented by counsel. Defendant argued that he had a right to represent himself, which was why he had requested standby counsel. The trial court stated that defendant could not have dual representation of self-representation and representation by counsel. The trial court also noted that pursuant to statute, any proceeding held after an individual has been found NGRI required the defendant to be represented by counsel prior to any matter being addressed. Additionally, the trial court indicated, for the record, that pursuant to Illinois Supreme Court Rule 137, when counsel files a particular petition, or a motion, or submits an order commemorating the Court's ruling, counsel does it to the best of their knowledge, information, and belief after a reasonable inquiry. The trial court noted, however, that the applicable statute for calculating the application of good time credit against the maximum possible sentence after a finding of NGRI was "not the clearest statute that has been drafted." The trial court, therefore, denied defendant's *pro se* motion for sanctions. The trial court also found that any other *pro se* motions were moot.

¶ 22    Defendant appealed. Initially, the Office of the State Appellate Defender (OSAD) was appointed as defendant's counsel on appeal. The deputy appellate defender filed a motion for

9

OSAD to withdraw as counsel for defendant on appeal, arguing that pursuant to section 10 of the State Appellate Defendant Act (725 ILCS 105/10 (West 2018)), OSAD was only authorized to represent indigent persons on appeal "in criminal and delinquent minor proceedings." In the motion to withdraw as counsel, the deputy appellate defender noted that defendant's appeal of the denial of his motion for Rule 137 sanctions was a civil matter and the verdict of not guilty by reason of insanity was an acquittal absolving defendant of any criminal liability, so that the appeal in this case was a civil matter and OSAD was not authorized to represent defendant. This court allowed OSAD's motion to withdraw as counsel on appeal for defendant.

¶ 23                                    II. ANALYSIS

In his *pro se* brief on appeal, defendant argues that Illinois Supreme Court Rule 137 sanctions were proper in this case where the State's position that the conditional release order should remain in effect for five years was not warranted by existing law. Defendant contends the State's purpose in asserting its position was to harass defendant to keep him monitored as long as possible and, in doing so, needlessly increased the cost of litigation. Defendant also contends that he felt harassed and intimated. Defendant further contends that the State made the bad faith argument (that the conditional release order should be in effect for five years) as an "oral pleading," despite the clear language of section 5-2-4 of the Code related to proceedings after an acquittal of insanity not supporting such an argument. Defendant requests that this court hold attorneys FitzSimons and Brady accountable and sanction them for violating Rule 137. Defendant further requests that this court remand with directions for further proceedings on defendant's claim against attorneys FitzSimons and Brady "or whatever party influenced their actions" for the "Hate Crime" against defendant in this case. In response, the State argues

defendant's *pro se* motion for sanctions was not properly before the trial court because he was represented by counsel who refused to adopt or present it.

¶ 24    A defendant has no authority to file *pro se* motions when he or she is represented by counsel. *People v. Bell*, 2018 IL App (4th) 151016, ¶ 28. "A defendant has the right to proceed either *pro se* or through counsel; he has no right to some sort of hybrid representation whereby he would receive the services of counsel and still be permitted to file *pro se* motions." *People v. Stevenson*, 2011 IL App (1st) 093413, ¶ 30.

¶ 25    In this case, defendant filed *pro se* motions to vacate his conditional discharge and for sanctions against the State. Subsequent to defendant filing those motions *pro se*, the trial court appointed counsel to represent defendant, pursuant to section 5-2-4 of the Code and with the agreement of defendant. See 730 ILCS 5/5-2-4(c) (West 2018) ("[e]very defendant acquitted of a felony by reason of insanity and subsequently found to be in need of mental health services shall be represented by counsel in all proceedings under this Section [section 5-2-4 proceedings after the acquittal by reason of insanity] and under the Mental Health and Developmental Disabilities Code"). Here, defendant's appointed counsel specifically indicated that she was not adopting defendant's *pro se* motions and was only proceeding on the motion to vacate defendant's conditional discharge that she had filed. Thus, defendant had no right to pursue the *pro se* motions, and the trial court did not err in denying the motion for sanctions. See *Stevenson*, 2011 IL App (1st) 093413, ¶ 30.

¶ 26    Additionally, it does not appear that Rule 137 sanctions are applicable in this case. Illinois Supreme Court Rule 137(a) provides, in relevant part:

> "Every pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record[.] *** A party who is

not represented by an attorney shall sign his pleading, motion, or other document and state his address. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee."

¶ 27    Section (b) of Rule 137 sets forth the procedure for alleging a violation of Rule 137 as follows:

"All proceedings under this rule shall be brought within the civil action in which the pleading, motion or other document referred to has been filed, and no violation or alleged violation of this rule shall give rise to a separate civil suit, but shall be considered a claim within the same civil action."

¶ 28    In evaluating the conduct of an attorney or party who signed a document or made a motion, a court must determine what was reasonable to believe at that time rather than in hindsight. *Lewy v. Koeckritz Intern., Inc.*, 211 Ill. App. 3d 330, 334 (1991). Since Rule 137 is

penal in nature, it must be strictly construed. *Id*. The determination of whether to impose Rule 137 sanctions is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). "The appellate court, when reviewing a circuit court decision to deny sanctions, should look to the record to determine whether the circuit court had an adequate basis for making its decision." *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 19.

¶ 29    In his *pro se* motion for Rule 137 sanctions, defendant takes issue with the conditional release order proposed by (but not signed by) the attorney for the State and his oral indication to the court that the State was opposing defendant's motion to vacate the conditional release order. It does not appear that the attorney for the State opposed defendant's motion to vacate the conditional release order in any writing with a signature. However, Rule 137 is intended to prevent counsel from making either written or oral assertions of fact or law without support. *Lewy*, 211 Ill. App. 3d at 334; see also *Fremarek v. John Hancock Mutual Life Insurance. Co.*, 272 Ill. App. 3d 1067, 1076 (1995) (allowing counsel to orally supplement an "empty" written motion that was a single paragraph without citation to any legal authority without considering the mandates of Rule 137 would frustrate the very purpose of the rule); *In re Estate of King*, 245 Ill. App. 3d 1088, 1102 (1993) ("Rule 137 *** is intended to prevent counsel from making assertions of fact or law without support, whether the assertions be written or oral").

¶ 30    Nonetheless, defendant has made no argument and has provided no authority to support the imposition of Rule 137 sanctions in proceedings after an acquittal by reason of insanity in a criminal matter. Illinois Supreme Court Rule 341(h)(7) mandates that an appellant's brief contain both argument and citation to relevant authority. "Points not argued are forfeited." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises,*

*Inc.*, 2013 IL 115106, ¶ 56 ("a reviewing court is not simply a depository into which a party may dump the burden of argument and research"). "*Pro se* litigants are not excused from following rules that dictate the form and content of appellate briefs." *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5.

¶ 31        The language of Rule 137(b) specifically indicates that a motion for Rule 137 sanctions must be brought within the same "civil action" in which the pleading or motion alleged to have violated the principles of Rule 137 had been filed and does not give rise to a separate civil suit. Defendants who are found not guilty by reason of insanity, whether they are subsequently committed or not, remain under the jurisdiction of the criminal court for a period of time equal to the longest possible sentence for the most serious crimes with which they were charged. 730 ILCS 5/5-2-4 (West 2018); *People v. Thiem*, 82 Ill. App. 3d 956 (1980) (the date set by the trial court ending the maximum period of involuntary commitment under section 5-2-4(b) is known as the *Thiem* date). When NGRI defendants reach their *Thiem* date, the DHS either releases them or recommits them as civil patients, either voluntarily or involuntarily. *Lucas v. Peters*, 318 Ill. App. 3d 1, 5 (2000). Defendant has forfeited any argument that Rule 137 allows for sanctions in proceedings after an acquittal by reason of insanity in a criminal matter after the passing of the applicable *Thiem* date. Consequently, we do not address the issue or take any position on the matter.

¶ 32        Accordingly, we affirm the trial court's denial of defendant's motion for sanctions.

¶ 33                                III. CONCLUSION

¶ 34        The judgment of the circuit court of Peoria County is affirmed.

¶ 35        Affirmed.